## Ashton *versus* Sproule.

Under the Act 5th April 1849 and the saving clause of the repealing Act of 8th April 1851, where the endorser's residence or place of business is not added to his endorsement, a protest made at any time before suit brought, is receivable in evidence against him; and such endorser is not discharged by the omission to give notice of non-payment at the maturity of the note.

An exception will not lie to the refusal of the court to strike out evidence which has been received without objection; the only remedy is, to pray the court for instructions as to its effect.

An endorser, who is not discharged by the omission to give notice of non-payment, in consequence of the provisions of the Act 5th April 1849, occupies the position of a surety, and is not discharged by a mere indulgence given to the maker.

To make an agreement to give time to the maker, effectual to discharge the surety, there must be a consideration for it.

An omission by the maker to secure the endorser, in accordance with an expressed intent to do so, will not discharge the latter, unless the former was prevented by the act of the holder of the note from carrying his intention into effect.

ERROR to the District Court of *Philadelphia.* 〔illegible margin note〕

This was an action of *assumpsit* by Oliver Sproule against Samuel K. Ashton, as endorser of a promissory note, of which the following is a copy:—

$300.                              Phila., March 24th 1851.

Twelve months after date, I promise to pay to the order of Oliver Sproule, three hundred dollars, with lawful interest from date, without defalcation, for value received (not to be deposited in bank).                              GEO. E. MURRAY.

Endorsed—SAMUEL K. ASHTON.

At the maturity of this note, no demand of payment was made on the maker, nor was any notice of non-payment given to the defendant. It was protested for non-payment on the 11th March 1858, shortly before the commencement of this suit.

On the trial, the plaintiff gave the note and protest in evidence, and proved that he loaned the sum mentioned in the note to George E. Murray, on the faith of the defendant's endorsement.

The defendant called George E. Murray as a witness, who testified as follows:—

"I live on Eleventh street, below Chestnut; I am a dentist, and know the plaintiff; he was in my employ three years; I had paid him several sums of money; my wife knew of it, and the plaintiff collected money for me and kept it; kept $25 from Mr. Winchester; he then arranged with me, after the year had expired, and the note was due, that I was to pay him, by instalments, the amount of this note, as it suited my convenience. This was about three years ago. The instalments were to be paid as suited me,

[Ashton *v.* Sproule.]

and he agreed with me, that he was to have no claim on the defendant. I never took receipts. The plaintiff told me yesterday that he had an account. I have a claim against the plaintiff, for teaching him dentistry; he was about three years under my tuition. The usual fee is $200. The plaintiff said he would never make a claim on defendant. Three or four days after this arrangement, he sued me; it was in August or September, A. D. 1852, that he arranged with me to pay in instalments, and the plaintiff remained two years with me. He said, he did not hold the doctor responsible. At the time the note matured, I had stocks, which the defendant knew of, and which I would have transferred to him if he had been pushed. I offered to do so, but as I made the arrangement with the plaintiff, I did not transfer the stocks. It was previous to the arrangement with the plaintiff, that I made this offer. I kept the stocks after the plaintiff agreed with me not to hold defendant."

*Cross-examined.*—" I did not pay this note at maturity, because it was not claimed, and no demand was made; the plaintiff had collected my money, $25, and said he would give me credit for that on account of the note, and I have paid him amounts; the stock I owned then was in the Moyamensing Building Association, and the Odd Fellows' Hall Association; I owned eight shares of the Moyamensing Building Association, $50 a share; I had paid in $50 or $55 on each share; I was several years a director; outside of the plaintiff's claim, then, I owed nothing; I gave the defendant no consideration for endorsing this note; the defendant was to endorse the note, and there was nothing said to the defendant to secure him; I tendered to the defendant security two years afterwards, but having made an arrangement with the plaintiff for time, I did not secure the defendant. I told the plaintiff, that I would transfer to the defendant to secure him (the defendant), and the plaintiff said, I need not do that, and that he would not look to the doctor for it, and I did not secure the doctor."

The defendant's counsel then moved the court to strike out the evidence of the protest, which was overruled, and the defendant excepted.

The defendant's counsel presented the following points in writing, upon which he requested the court to charge the jury:—

1. That the Act of April 5th 1849, does not apply, and no recovery can be had.

2. That if the jury find from the evidence, that the plaintiff agreed with Murray, after the maturity of this note, to give him time, and received part of the money, agreeing to take the balance in instalments, in such event the defendant is not liable.

3. That if the jury believe the maker of the note forbore to

[Ashton *v.* Sproule.]

secure the defendant, in consequence of the plaintiff agreeing not to look to defendant, the defendant is not liable.

The learned judge declined to answer the defendant's points, because they were not presented before the commencement of the summing up, as·required by the rule of court; but charged the jury as follows :—

"The Act of 1849 applies to this note, and it was quite sufficient that the note was protested before this action was brought.

"It is said, that the time given, discharged the defendant. The law is not so. The plaintiff was not bound to proceed against Murray short of six years.

"It is said, that an agreement was made by the plaintiff, to give time, and he gave it to Murray. This is not enough. There must be a consideration to make such agreement available.

"If the $25 was agreed to be credited to this or any other debt, I can see no consideration for any time given in that. You can't pay part of a debt as a consideration for a new bargain.

"If plaintiff was told by Murray, that he meant to transfer sufficient stock to secure defendant, and he had the means, and therefore agreed not to look to defendant, he is discharged."

To this instruction the defendant excepted; and a verdict and judgment having been rendered for the plaintiff for $446.87, the defendant removed the cause to this court, and here assigned for error : 1. The refusal of the court below to strike out the evidence of the protest : 2. The charge of the court.

*F. C. Brewster,* for the plaintiff in error.

*W. S. Pierce,* for the defendant in error.

The opinion of the court was delivered by

THOMPSON, J.—The complaint that the learned judge of the District Court did not respond to the points of the plaintiff in error, whatever he may have said about their having been presented out of time, according the requirement of the rule of court, is without foundation, as he did substantially answer each and every of them; and this dispenses with the necessity of a further discussion of the Act April 17th 1856, with which it was thought the action of the court conflicted.

The first and second specifications of error may be considered together. The protest was properly receivable in evidence under the provisions of the Act of April 5th 1849, and the saving clause of the Act of April 8th 1851, which repealed that act. These acts were not only a legal foundation for the protest, but for the effect given to it by the judge: Barclay *v.* Weaver, 7 *Harris* 398. It is to be hoped, that but few more cases will be found to come within the operation of this unwise alteration of the commercial

[Ashton *v.* Sproule.]

law.   Short-lived as it was, it has left evidence of its power to generate litigation in the surprise and injury to parties relying on settled law, long usage and custom.

As to the third error.   I know of no practice to justify an exception to the refusal of a court to strike *out* evidence, which has been received without objection.   Being in, the only alternative that remains to the party who thinks he has cause to complain of it, is to pray the court for instructions in regard to its effect. This was the course the plaintiff might have pursued here.   In fact, he had the full benefit of such a course in the charge affirming the sufficiency of the protest to which he excepted.

Fourth.   The learned judge instructed the jury, that time given by the plaintiff below to the maker of the note, did not discharge the plaintiff in error, the endorser.   That he was not bound to proceed against the maker short of six years.   This is certainly the law.   Mere indulgence will not discharge a surety : Erie Bank *v.* Gibson, 1 *Watts* 143 ; Johnston *v.* Thompson, 4 *Id.* 446 ; and in this relation stood the defendant.   Owing to the statutes cited, and the form of his endorsement, he was not entitled to notice of non-payment at the maturity of the note, and was, therefore, in the position of an ordinary surety.   In such case, we have seen that mere indulgence to the principal would not operate to discharge him.   So, too, was the instruction accurate, that, to make the agreement with the maker for time, effectual, there must have been some consideration for it : 3 *Penn. R.* 439 ; *Byles on Bills* 194 ; 4 *Watts* 446.

Fifth.   The charge on the subject of the transfer of the stock by the maker to secure the defendant, was faultless in view of the testimony.   An intention to do the act was certainly nothing to the purpose, if he had not the means.   The intent, the ability to carry it out, and prevention by the plaintiff, were concurring elements necessary to be shown as existing, to raise an equitable defence on the score of injury to the defendant by the act of the plaintiff, and the point was properly submitted to the jury by the learned judge.

Sixth.   The last assignment of error, viz., "that the court erred in leaving the case to the jury, and in declining to charge that no recovery could be had," is without foundation, for the all-sufficient reason that this would have been wrong ; and for the further reason, that the court was not asked to do so by the party who complains that it was not so done.   All the arguments, therefore, predicated of this assumed error, fall with it.   We see nothing in the case that requires correction, and the

Judgment is affirmed.