## Yeager & German *versus* Weaver.

| 64 | 425 |
|---|---|
| 128 | 569 |
| 64 | 425 |
| 227 | 3647 |

1. Weaver leased from Yeager but could not get possession. In a suit for damages, Weaver might prove that he had sold his real and personal estate, that he was without a house and compelled to board, as showing lost time, trouble and inconvenience, the result of the breach of the contract.

2. The refusal to strike out testimony after it has been received without objection, is not reviewable on error.

3. In such case the only course is to request the court to instruct the jury to disregard the testimony.

4. Under the Act of April 15th 1869, husband and wife may be witnesses for, but not against each other.

5. By the Amendment of the Constitution of 1864, it was not intended that the title should be a full index to all the contents of the law, but to prevent including in an act, sections on entirely different subjects.

6. The *title* of the act naming " parties in interest" is cognate with the subject to extend the law to " persons"—not " parties"—and to those who had before been excluded on the ground of policy.

March 15th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1870, No. 136.

This was an action of assumpsit, brought May 8th 1866, by Valentine G. Weaver against William F. Yeager and Nathan German, partners trading as Yeager & German.

The cause of action was the alleged violation of a contract of leasing from the defendants to the plaintiff.

The case was tried September 15th 1869, before Longaker, P. J.

The plaintiff gave in evidence a lease (not under seal), dated

[Yeager *v.* Weaver.]

December 28th 1865, by which the defendants agreed to lease to him an hotel in Allentown for three years from the succeeding first day of April. Before the commencement of the lease the plaintiff bought many articles for the purpose of furnishing the hotel.

On the 1st of April the plaintiff attempted to take possession of the hotel; the tenant of the preceding year, then occupying the house, refused to allow him to take possession. One of the defendants said that the plaintiff should get possession in ten days; said he would put the tenant out, and told the plaintiff to get ready to go in. The plaintiff did not get possession of the hotel, and after some months sold the furniture which he had provided for furnishing the hotel. He then offered to show that after the making of the lease he sold his house and lot and personal property at vendue, for the purpose of making preparation to go into the hotel, to be followed by evidence that when he failed to get into the hotel he was without a house, and was compelled to board, to which defendants objected as irrelevant and not the subject of damage. The offer was admitted by the court, and a bill of exceptions sealed. The plaintiff then gave evidence in accordance with the offer.

The plaintiff, testifying as to the value of the lease, said : " I mean I would have made $500 per year ; I mean $500 not as the value of an article of sale, I mean $500 a year profits could be made. All I mean by saying the lease was worth $1500, is, that I could make that much by staying there." The defendants moved to have the opinion as to value of lease ruled out, because it includes profits not the subject of damage.

The court overruled the motion, and sealed a bill of exceptions.

The plaintiff then called Caroline Weaver, his wife. The defendants objected to her competency. She was admitted by the court, and a bill of exceptions was sealed. The plaintiff having given other evidence, and the defendants having given evidence on their part, the jury found a verdict for the plaintiff for $910.

The court overruled a motion by the defendants for a new trial, on condition that the plaintiff would release $200 of the damages, which he accordingly did.

The defendants took a writ of error, and assigned for error,

1. Admitting the evidence on the 1st bill of exceptions.

2. Refusing to rule out the testimony as to the value of the lease.

3. Admitting the wife of the plaintiff to testify.

*J. B. Metzgar* and *Erdman & Oliver*, for plaintiff in error.— As to the 1st error : 2 Parsons on Contracts 455 ; Stewart *v.* Walker, 2 Harris 293 ; Forsyth *v.* Palmer, Id. 97 ; Railroad Company *v.* Aspell, 11 Id. 147 ; Fleming *v.* Beck, 12 Wright 309 ;

[*Yeager v. Weaver.*]

Fessler *v.* Love, Id. 407.   As to the 3d error: Act of April 15th
1869, § 1, Pamph. L. 30, Purd. 1566, pl. 1; Pringle *v.* Pringle,
9 P. F. Smith 288; 2d Amendment of Const., 1864, Purd. 24,
§ VIII.

*E. Albright* and *J. D. Stiles*, for defendant in error.—As to
1st error: Schmoyer *v.* Schmoyer, 5 Harris 520; Morgan *v.* Weir,
1 Casey 119; Peterson *v.* Speer, 5 Id. 479.   As to the 3d error:
Blood *v.* Mercilliott, 3 P. F. Smith 391; Bigelow *v.* Heyer, 5
Allen 245; Barton *v.* Gledhill, 12 Abbott 246.

The opinion of the court was delivered, March 31st 1870, by
SHARSWOOD, J.—The 1st assignment of error is not according
to the Rule VIII., 6 Harris 578.   It does not quote "the full
substance of the bill of exceptions, or copy the bill in immediate
connection with the specification."   It omits a very material part
of the bill that the counsel objected to the evidence offered "as
irrelevant and not the subject of damage."   We might treat the
assignment as none.   But the evidence was clearly relevant and
the subject of damage, for it showed that the plaintiff had lost
time, and been put to trouble and inconvenience, the natural con-
sequences of the breach of contract by the defendant.   No error
has been assigned to any part of the charge, so that we are justi-
fied in concluding that the rule for the measure of damages, as
given to the jury, was not injurious to the plaintiff in error.

The 2d assignment is, that the court erred in overruling the
defendant's motion to strike out a part of the testimony after it
had been received without objection.   We have invariably held
that the refusal of such a motion is not the subject of a bill of
exceptions.   The only proper course is to request the court to
instruct the jury to disregard the evidence if it was incompetent:
Robinson *v.* Snyder, 1 Casey 203; Ashton *v.* Sproule, 11 Id. 492;
Oswald *v.* Kennedy, 12 Wright 9.

The 3d assignment is, that the court erred in allowing Caroline
Weaver, the wife of the plaintiff, to be sworn and to testify as a
witness in the case.   The Act of April 15th 1869, Pamph. L. 30,
declares "that no interest nor policy of law shall exclude a party
or person from being a witness in any civil proceeding: Provided,
this act shall not alter the law as now declared and practised in
the courts of this Commonwealth, so as to allow husband and wife
to testify against each other."   It would seem very plain, from the
words of the statute, that it was the intention of the legislature
that husband and wife should be competent witnesses for, but not
against each other.   It is objected that the title of the act is "An
act allowing parties in interest to be witnesses," and that since the
adoption of the Constitutional Amendment of 1864 the title must

[Yeager *v.* Weaver.]

be regarded as a necessary part of a statute.   We may admit this premise.   In England the title is no part of a statute.   Ld. Mansfield gives as a reason for this, that "it does not pass with the same solemnity.   One reading is often sufficient:" The King *v.* Williams, 1 W. Bl. 93.   With us, however, it is always read three times. There may be good reason for holding that the title as well as the preamble may be resorted to for the purpose of assisting the construction, whenever the enacting clause is doubtful : see Cochran *v.* Library Co., 25 Legal Intel. 20.   But it certainly is not to overrule or control it.   The people did not mean by the amendment of 1864 to require that the title should be a full index to all the contents of the law, but by declaring that each bill shall be confined to one subject, which shall be clearly expressed in the title, to prohibit the vicious practice of rolling together what were termed "Omnibus Bills," including sometimes more than a hundred sections on entirely different subjects, with the title of the enactment of the first section, "and for other purposes."   When the title, therefore, speaks of parties in interest, it was cognate with the subject to extend the law to "persons" not "parties," and to those who had before been excluded on the score of policy. The contention that by the necessary subjection of the wife, when offered by the husband as a witness to cross-examination by the adverse party, she will thereby be compelled to testify against him, certainly does great credit to the ingenuity of the counsel, but it is an argument which should properly have been addressed to the legislature, not to us.   When a husband offers his wife as a witness in his favor, he certainly agrees that her testimony, though unfavorable, whether it comes out on examination in chief or cross-examination, shall be accredited to the jury, and it was for the lawmakers to consider what the effect of that might be upon domestic harmony.   They have said that the adverse party shall not compel her to testify against her husband, but this is the only exception in this respect which they have seen fit to make to the rule that no interest or policy of law shall exclude a party or person from being a witness in any civil proceeding.

Judgment affirmed.