## McDyer *v.* Eastern Pennsylvania Railways Company, Appellant.

*Negligence—Street railways—Contributory negligence—Oblique angled collision—Vehicles—Milk dealer.*

1. In an action to recover damages for the death of a milkman who was struck by a trolley car while attempting between intersecting streets to cross from one side of a street to the other at an oblique angle over trolley tracks in the middle of the street, where the testimony of the son of the deceased, who was with him in the wagon, is that immediately before crossing the track they stopped about three feet from the nearest rail and looked and listened but did not see or hear a car; that they then started across the tracks very slowly; and that when the horse had cleared the tracks and about one minute after they had stopped and looked, a car ran into the rear wheel of the wagon, throwing deceased out and upsetting the wagon, pushing it possibly sixty or 100 feet; and where witnesses for the plaintiff testify that the car was going very fast, going from twenty-five to thirty-five miles an hour, that it was about 400 feet away when the horse was on the track, and a witness for the defense testifies that one could see in the direction from which the car approached at least 725 feet, the questions of negligence and contributory negligence are for the jury.

*Practice, C. P.—Evidence—Motion to strike out testimony—Trial— Physician—Medical license—Registration—Expert testimony—Opinion based on conflicting testimony—Assignments of error—Instructions.*

2. After testimony has been received without objection, the refusal

to strike it out is not reviewable. In such a case the only course is to request the court to instruct the jury to disregard the testimony and upon a refusal to assign error.

3. Where a physician, witness for plaintiff, states on cross-examination that he is licensed and duly registered in Pennsylvania and his testimony is admitted without objection, and thereafter counsel for defendant introduces evidence to show he is not a licentiate, followed by a motion to strike out all his testimony, the refusal of such a motion is not reviewable.

4. A doctor cannot be asked to express a professional opinion as to the cause of death based on the hearing of testimony which is conflicting in many essentials.

5. An expert witness after being first acquainted with the whole of the particular part upon which he is to pronounce, may be asked to express an opinion upon any defined portion of the testimony, which is not contradictory in itself, and the truth of which is expressly assumed; but he may not be asked to first ascertain and determine the conflicting elements, and then to express an opinion upon his conclusion.

*Practice, C. P.—Evidence—Earnings—Husband and wife.*

6. The question, "What were the average net earnings of deceased in a year during the time he was engaged in the milk business, per year, if you know?" addressed to the wife of the deceased, is relevant and competent, although the testimony sought to be elicited, standing alone, would not be sufficient to base an estimate of damages upon.

*Practice, C. P. —Trial—Charge—Abstracts from charge.*

7. Abstracts from the judge's charge must be read in connection with the charge as a whole.

Argued March 7, 1910. Appeal, No. 192, Jan. T., 1909, by defendant, from judgment of C. P. Carbon Co., Oct. T., 1908, No. 28, on verdict for plaintiff in case of Mary McDyer v. Eastern Pennsylvania Railways Company. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries resulting in death. Before HEYDT, P. J.

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

The opinion of the Supreme Court states the case.

*Errors assigned* were in refusing to strike out testimony; in refusing to permit certain physicians called by the defense

to testify as experts; and to portions of the charge of the court.

*R. H. Koch*, with him *Frederick Bertolette*, for appellant.— The testimony of the doctors called based upon a knowledge of all the medical testimony in the case was clearly admissible: Good v. Good, 1 Mona. 718; Yardley v. Cuthbertson, 108 Pa. 395; Olmstead v. Gere, 100 Pa. 127; Burkholder v. Tyson, 1 Berks, 37.

The deceased was bound to look until he got to the rail, and to keep on looking: Ehrisman v. Ry. Co., 150 Pa. 180; Omslaer v. Traction Co., 168 Pa. 519; Burke v. Traction Co., 198 Pa. 497; Boring v. Traction Co., 211 Pa. 594; Timler v. Transit Co., 214 Pa. 475; Kannenberg v. Traction Co., 215 Pa. 555; Houston v. Traction Co., 28 Pa. Superior Ct. 374; Sontum v. Railway & Light Co., 226 Pa. 230; Smathers v. Ry. Co., 226 Pa. 212; McKee v. Harrisburg Traction Co., 211 Pa. 47.

Profits derived from an investment or the management of a business enterprise are not earnings: Goodhart v. R. R. Co., 177 Pa. 1; Miller v. Gas Co., 206 Pa. 254; Wallace v. R. R. Co., 195 Pa. 127.

*E. O. Nothstein*, with him *Wm. G. Freyman*, for appellee.— The refusal of a motion to strike out evidence received without objection is not reviewable: Yeager & German v. Weaver, 64 Pa. 425; Montgomery v. Cunningham, 104 Pa. 349.

The case was for the jury: Boggs v. Railway Co., 216 Pa. 314; Mortimer v. Traction Co., 216 Pa. 326; Hamilton v. Traction Co., 201 Pa. 351; Woelfel v. Railway Co., 183 Pa. 213; Reilley v. Traction Co., 176 Pa. 335; Holt v. Railroad Co., 206 Pa. 356; Kroesen v. Ry. Co., 198 Pa. 26.

Where loss of earning power is one of the principal items of damages the evidence presented should be sufficiently explicit to enable the jury to form an intelligent judgment: Wallace v. Penna. Co., 219 Pa. 327.

OPINION BY MR. JUSTICE MOSCHZISKER, March 28, 1910:

Mary McDyer, widow of James McDyer, recovered a ver-

dict for an injury to her husband resulting in his death alleged to have been caused by the negligence of the defendant company. The defendant has appealed.

James McDyer was a milk dealer. On the day of the accident he was driving a one-horse wagon, and was accompanied by his son, a lad of seventeen. He had served a customer on the south side of a certain street, in the middle of which was a trolley line. He drove a short distance and before reaching the next intersecting street attempted to cross the trolley tracks at an oblique angle in order to get on the opposite side to serve another customer. According to the testimony of the son, immediately before crossing they stopped about three feet from the nearest rail and looked up and down the trolley line; he was listening, but did not see or hear any car; they then started across the tracks "very slowly"; when the horse had cleared the tracks and the wagon was between them, a car ran into the rear wheel; he says it was about one minute from the time they stopped and looked until they were struck by the car. The wagon was upset and pushed possibly sixty to 100 feet, McDyer being thrown out and so injured that he died about two and one-half months thereafter. Each side produced a number of witnesses, and there was much conflicting testimony, but the plaintiff's witnesses in a general way bear out the story as we have given it. One witness for the plaintiff stated that the car was going very fast; and another that just as the team crossed the track he saw the top of the car over the crest of the hill, and that it came at a rate between twenty-five and thirty-five miles an hour. Another witness stated that the car was about 400 feet away when the horse was on the track; and a witness for the defense testified that one could see in the direction from which the car approached at least 725 feet. On this state of facts it cannot be said as a matter of law that the motorman was free from negligence, or that McDyer was guilty of contributory negligence. Both of these points were for the jury, and were properly submitted in a comprehensive charge. McDyer was not bound to stop before crossing the track, but he did so; and we have positive testimony that he looked at

a point about three feet from the nearest rail, and that his companion listened. In the absence of testimony to the contrary, the deceased is entitled to the presumption that he continued to exercise care by looking and listening; and whether or not this presumption was overcome would be for the jury to decide on all the evidence in the case. The only other person in the wagon was produced as a witness and could have been cross-examined on this point had counsel for the defense so desired. This is not a clear case where we can say that the story told by all of the plaintiff's witnesses is impossible and the car must have been in sight when McDyer entered upon the track. A car traveling at the rate of fifteen miles an hour will cover twenty-two feet in one second: Piatt v. Pittsburg Rys. Co., 219 Pa. 583. Here we have testimony that the car was traveling at least thirty miles an hour, which would be forty-four feet in one second, or over 800 feet in twenty seconds. That McDyer had to drive slowly and with care is made apparent by the testimony, "because the rails and sills were so high it would smash your wagon to pieces if you drove fast." Under these circumstances we cannot say that he was obliged to give his exclusive attention to the possible approach of a trolley car which was not in sight when he started to cross the tracks. Nor can we say that he must have cleared the tracks in twenty seconds or less. On the other hand, we have the testimony produced by the defendant that the trolley car could be stopped within the distance of sixty feet, and that there was a clear view on the track of over 700 feet. On the testimony as a whole the jury may have concluded that there was no car in sight when he first entered the tracks, or that the car was then at least 700 feet away; that the motorman must have seen the wagon, and had ample time to stop if he had kept his car under proper control. If so, they had the right to find that the motorman was guilty of negligence, and that McDyer was not guilty of contributory negligence.

Much of the argument of counsel for the appellant goes to the weight of the evidence on the various points involved. Whether or not the jury properly weighed the evidence

should have been submitted to the court below on a motion for a new trial; and this, so far as the record in the paper-book reveals, was not done.

It is complained that the court erred in overruling defendant's objection to the question addressed to the plaintiff: "What were the average net earnings of Mr. McDyer in a year during the time he was engaged in the milk business, per year, if you know?" We see no error in the ruling. Although the testimony sought to be elicited, standing alone, would not have been sufficient to base an estimate of damages upon, yet the question itself was clearly relevant and competent, and the witness was in a position to give the desired information. As this is the only assignment going to the sufficiency of the evidence on the question of the proof of the damages, we will not further discuss that branch of the case.

On cross-examination as to his qualifications as a physician, Dr. Gallagher, a witness for the plaintiff, stated that he had been licensed and duly registered in Pennsylvania and his testimony was admitted without objection. He stated that he was the attending physician, and gave the details as to McDyer's condition and ailments, expressing the opinion that the patient had died as a result of his injuries from the accident. After this, counsel for the defendant produced evidence to show that Dr. Gallagher was not a licentiate of the medical council of Pennsylvania, and that his statements to the contrary were untrue; which was followed by a motion to strike out all of his testimony. This was refused, the trial judge stating: "The court declined to strike out the testimony of Dr. Gallagher. He was one of the physicians who attended upon Mr. McDyer, the deceased, and he was the physician de facto if not de jure. It may affect his credibility, but it would not be a warrant for the court to strike out his testimony, the fact he was not registered." After testimony has been received without objection, the refusal to strike it out is not reviewable. In such a case the only course is to request the court to instruct the jury to disregard the testimony, and upon a refusal, to assign error: Ashton v. Sproule, 35 Pa. 492; Oswald v. Kennedy, 48 Pa.

9; Yeager & German v. Weaver, 64 Pa. 425; Geist's App., 104 Pa. 351. In these days when there is a possible tendency to abuse the privilege of informing the court and jury by medical experts, where one is convinced in any particular instance that the testimony from such a source is in any respect impossible, insincere or unjustified, the matter should be called to the attention of the trial judge by appropriate requests for charge, so that the court may be in a position to properly exercise discretion in submitting the evidence to the jury; but in the present case this course was not pursued. For the reasons stated the assignments going to the point in question cannot be sustained. Before leaving the subject it is but fair to say that the testimony shows Dr. Gallagher to be a graduate of a medical school of standing in Pennsylvania and a practitioner of many years.

Several doctors were called by the defendant, and after stating that they had either heard the evidence or read the notes of testimony of the witnesses named in the following question, they were asked: "From your experience as a doctor and your knowledge of medicine, and the information you received from the evidence of Dr. Gallagher, supplemented by the evidence of Drs. Hill, Schnifferstein, and Young, do you have any fixed opinion as to the cause of McDyer's death?" In each instance an objection to this question was sustained. All of the doctors mentioned, with the exception of Dr. Gallagher, were witnesses for the defendant, and their testimony was conflicting in many essentials with the testimony given by him. An expert witness, after being first acquainted with the whole of the particular part upon which he is to pronounce, may be asked to express an opinion upon any defined portion of the testimony, which is not contradictory in itself, and the truth of which is expressly assumed; but he may not be asked to first ascertain and determine the conflicting elements, and then to express an opinion upon his conclusion: Yardley v. Cuthbertson, 108 Pa. 395. As the question was framed, this is precisely what the witnesses would have been obliged to do, and for that reason the objection was properly sustained.

In the fifth, sixth and seventh assignments counsel for the defendant complains of three short abstracts from the charge of the trial judge. When these portions are read in connection with the charge as a whole, the criticisms made are found to be unwarranted. The plaintiff's case to a degree rests upon the presumption, to which she was entitled, that the decedent acted with care, and therefore the trial judge made no misstatement of fact in saying that the contention was that McDyer approached the track carefully, and that he listened. As this was followed by a fair statement of the contentions of the defense, and by full instructions as to the care which McDyer was bound to take in order to avoid contributory negligence, no harm could possibly have been done by the manner in which the plaintiff's contention was stated. The charge contains an ample statement of the law on the measure of damages. It is true that the abstract assigned for error simply refers to the sum total of decedent's net yearly earnings as stated in the testimony of his widow; but there was considerable other testimony in detail upon this subject which counsel could have had called to the attention of the jury had he submitted proper requests to the trial judge. Not having pursued this course, he is not in a position to complain.

Upon the whole case we discover no reversible error, and no useful purpose will be served by a further discussion of the assignments. They are all overruled and the judgment is affirmed.