## Pietro v. Philadelphia Rapid Transit Co., Appellant.

424

Argued November 26, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Layton M. Schoch* and *J. J. K. Caskie,* for appellant.
—The court erred in declining the motion of defendant to strike from the record 'the testimony and the opinions of Dr. Leavitt as to the alleged fact, cause and connection of the contended condition: Becker v. Phila., 245 Pa. 462; McMinis v. Transit Co., 288 Pa. 377; Howarth v. Express Co., 269 Pa. 280.

The hypothetical question to Dr. Leavitt was improper and the objection should have been sustained.

The court erred in declining the motion of the defendant to strike out the testimony of the lay witnesses respecting conduct and statements of plaintiff: Rouch v. Zehring, 59 Pa. 74; Com. v. Wireback, 190 Pa. 138.

. The fourth point of defendant requesting instructions to the jury to disregard the evidence respecting the so-called mental condition should have been affirmed.

The court erred in permitting plaintiff's son to testify without any books or accounts respecting alleged earnings of plaintiff at a time when such son was but seventeen years of age, and in instructions allowing the jury to base an award thereon: Muncey v. Taxi Service Co., 269 Pa. 97; Boggess v. R. R., 234 Pa. 379.

*M. A. Foley,* of *Graham, Garaguso & Foley,* for appellee.—The hypothetical question was fully warranted by the facts, and, in answer to this question, Dr. Leavitt testified that plaintiff was suffering from a traumatic dementia, which in his opinion was a direct result of the accident: McMinis v. Transit Co., 288 Pa. 377.

Witnesses are not only permitted to testify as to the conduct and actions, but, after detailing the conduct and actions they observed, are permitted to express an opinion as to the mental condition: Pidcock v. Potter, 68 Pa. 342; Reichenbach v. Ruddach, 127 Pa. 564; Turner v. Security & Trust Co., 213 U. S. 260.

426

The evidence of the son was properly admitted: Boggess v. R. R., 234 Pa. 379; McCullough v. Furnace Co., 293 Pa. 45.

OPINION BY MR. JUSTICE SIMPSON, January 6, 1930:

Toronto and 22d Streets, in the City of Philadelphia, cross each other at right angles; the former is trackless, but the latter has two lines of trolley tracks owned by defendant, on one of which its cars travel northward, and on the other southward. The accident, out of which the present action arose, occurred on a bright clear day at the intersection of those streets, at a time when trolley cars, trucks and other vehicles using the streets could be seen for a long distance.

In considering whether or not the trial judge erred in not giving binding instructions for defendant, in addition to the admitted facts above stated, there was ample testimony from which the jury could have found the following also: Plaintiff was riding westward on Toronto Street, on a heavily laden business truck, belonging to him and being driven by one of his employees. When they reached the intersection of 22d Street, and looked southward along defendant's northbound track, they saw one of defendant's trolley cars at a standstill, some 300 feet away. The party then started to cross 22d Street, and after they had partially passed over the northbound track, and before they could get entirely across it, because the street was blocked by a congested stream of traffic traveling southward on the West side of the street, they observed that the trolley car referred to, was moving northward. They signaled it to stop, but the motorman, who could easily have seen both the truck and the signals, if he had been looking where he was going, did not even slow down; running forward, at a high rate of speed, he struck the truck in the rear and knocked it over in the direction of the northwest corner of the two streets, which is what was to be expected if the foregoing story was true, and probably

would not have occurred if the truck had run into the east side of the trolley car, as the motorman said it did. This statement of the facts, which must be accepted as true so far as regards the assignment of error being considered, demonstrates that the trial judge would have committed grave error had he given binding instructions for defendant.

The only other question which goes to the whole case, is whether the judgment must be reversed because the suit was brought and is still being conducted in plaintiff's name, and not in the name of a committee for him. The amended statement averred that plaintiff had become a traumatic dement, as a result of the injury he had sustained, and this was probably the principal point contested during the trial. Defendant could have preliminarily raised the question of plaintiff's right to proceed, by objecting to the amended statement in the way provided by section 20 of the Practice Act of 1915, P. L. 483; but this was not done. In the early days of the common law, the objection could have been made, for the first time, after judgment, with the same effect as if it had been made before. It is gravely doubtful whether that is so in any common law jurisdiction at the present time (see 32 C. J. 763 and note 30 thereto, 772, 773) but certainly the point cannot now be raised by this defendant, who took the chance of the verdict without previously objecting, since beyond question it has not been injured by the prosecution of the suit in its present form. No evidence was admitted which would have been excluded, and none excluded which would have been admitted if a committee had been appointed and made a party to the action; the case was submitted to the jury in the same way it would have been if a committee had been prosecuting; and, if defendant ultimately loses, it can obtain leave to pay the verdict, with interest and costs, into court, if this is necessary and a committee is not duly appointed.

The alleged trial errors raise but two points needing consideration. It is said that error was committed in the refusal by the trial judge to strike out an opinion expressed by one of plaintiff's expert witnesses in answer to a hypothetical question. As we have already said, the principal issue of fact at the trial was whether or not plaintiff became a traumatic dement because of the injury he received. After the expert had duly qualified as such, the hypothetical question, somewhat informal, but not substantially objectionable, was propounded to him, and he was asked as to whether or not, in his opinion, assuming the facts stated to be true, dementia resulted from the injury. In reply the witness said that he believed it did. Up to this point there was no valid objection to either the question or the answer. The situation was wholly altered, however, by the cross-examination of the witness. In the course of it, the following question and answer appear: "Q. The opinion you have expressed, then is based upon not only your own examination, and not only on the facts or alleged facts embodied in the hypothetical question, but as well upon things that were said to you outside of court by the family, and facts or alleged facts you got from the brief of counsel in the case? A. That is true." Later, defendant's counsel moved to strike out the opinion previously expressed, because of the above and cognate questions and answers appearing in the cross-examination. The trial judge overruled the motion. This was clear error, for, under the facts as they then appeared, the opinion of the witness was partially based on unstated things said to him by plaintiff's family, and others found in the brief of plaintiff's counsel. Under such circumstances, there was no possible way for the jury to determine what weight should be given to the opinion. Had it been shown that the statements made by the family and those appearing in the brief, had been testified to at the trial and were assumed to be true when expressing the opinion, the jury would have been able

to form an intelligent judgment regarding it, for the question would then have included all the facts on which the opinion was based; or had the witness later stated that his opinion would have been the same, even with those extraneous facts eliminated, the giving weight to them in rendering the expressed opinion would have been cured; but neither of these courses was pursued. In view of this, the error below is clearly pointed out in Howarth v. Adams Express Co., 269 Pa. 280, in which we said at page 283: "An expert may express an opinion on an assumed state of facts, which the evidence tends to establish, but not on what some one told him, nor on what he learned from another doctor, nor from the history of the case, we know not what, nor by whom communicated. An opinion based on such a question would naturally be misleading. The answer is also bad, for it does not show what had been given the witness as the history of the case, nor assume the truth of the evidence to which he had listened. See Becker v. Phila. R. T. Co., 245 Pa. 462; Yardley v. Cuthbertson, 108 Pa. 395; McDyer v. Eastern Penna. Rys. Co., 227 Pa. 641. In such case, an expert opinion cannot be based upon the facts not before the jury: Rogers on Expert Testimony (2d ed. page 82); nor upon hearsay: Lawson on Expert and Opinion Evidence (2d ed. page 266)."

Another alleged error arose in this way. Plaintiff's business was the buying and selling of cases of what is generically termed soft drinks. He bought them from a single manufacturer, on credit, and the same day sold them for cash. As a result, his business investment was small and he did not think it necessary to keep books of account. His son, who appears to have been fairly well acquainted with the business and who assisted his father in it, testified at some length, under both examination and cross-examination, in a general way regarding the extent of it, but did not give exact figures, which naturally he could not do. As a consequence we have only general approximations regarding the quantity pur-

chased and sold, and the ultimate extent of the falling off of the business due to plaintiff's inability to continue it, but nothing whatever as to the time during which the falling off continued before the lowest ebb was reached. Probably the exact amount of the daily purchases and the amounts paid, both before and after the accident, could have been obtained from the books of the manufacturer, but this evidence was not produced and no reason was given why it was not. As each day's purchases were sold that day, probably the son could have told the sales prices paid per case, and the jury would then have had a reasonably exact statement of the profits from the purchases and sales, and the falling off in the latter after the accident, and from the apparent loss thus ascertained would have had to deduct only the relatively few expenses appertaining to the conduct of the business. This, properly fortified with evidence that the profit earned was due to the personal skill of defendant, and was lost solely because of his inability to carry on the business after the accident, would have brought the case fairly within the rule laid down in McLane v. Pittsburgh Rys. Co., 230 Pa. 29; Boggess v. Baltimore & Ohio R. R. Co., 234 Pa. 379; Baxter v. Phila. & Reading Ry. Co., 264 Pa. 467; Dempsey v. City of Scranton, 264 Pa. 495; and Muncey v. Pullman Taxi Service Co., 269 Pa. 97.

Without attempting to get the reasonably exact figures referred to, however, and after the son had disclaimed knowledge thereof, the latter was asked by plaintiff: "What was the average earnings that your father made out of the business in the years previous to the accident?" This was objected to, but the objection was overruled and the witness answered that the net earnings the year before the accident were $5,000 or $6,000. The objection should have been sustained. We recognize fully that the same exactness of proof cannot be expected regarding such a business as plaintiff's, as may be had regarding one which is more formally con-

ducted, but this furnishes no excuse for an opinion based wholly on inexactness where exactness is attainable, as here it was.

Perhaps, we should add, in order to avoid misconception, that we express no opinion on the point as to whether or not the court below abused its discretion in sustaining the verdict in the full amount rendered by the jury, because the situation may be entirely different after a later trial. The other assignments of error need not be considered; they are without merit.

The judgment of the court below is reversed, and a venire facias de novo is awarded.