## Theopholis v. Glen Falls Indemnity Company.

*J. F. Mahoney*, for plaintiff; *R. R. Koch*, for defendant.

HICKS, J., April 7, 1930.—This was an action to recover on an automobile insurance contract, issued by the defendant to the plaintiff, and covering his 6-cylinder Rickenbacker sedan, which was totally destroyed in an accidental collision on July 1, 1928. The only issue of fact at the trial was the market or cash value of the automobile at the time the loss occurred, taking into consideration depreciation which had taken place as a result of usage, price reduction and other like conditions on the date of its destruction.

Three witnesses were called by the plaintiff to testify as to the market or cash value at the time of the loss, taking into consideration depreciation, price reduction and other like conditions, and they gave their opinions of $1500 as such value. No complaint of this is made by the defendant. It called an expert in its own behalf, who stated the value to be, in his opinion, $350. Later, the court struck out this testimony on motion, and this action, together with another ruling on evidence—later to be noted—forms the two reasons urged by the defendant in its written argument in support of its motion for a new trial; the other reasons being abandoned.

640

Ray Thornburg was called by the defendant as an expert witness. He had not seen this car until after the collision in which it was totally destroyed when he inspected the wreck for the defendant. After the expert had duly qualified as such, he was asked a hypothetical question: "Q. It has been testified here, by witnesses called by the plaintiff, that this car was in excellent, or first class, condition immediately prior to the accident; that it had run about 20,000 miles; that it was bought new in May, 1926; that the accident happened on July 1, 1928. It has also been testified that at the time of this accident the Rickenbacker car had gone out of manufacture. From your experience, and basing your conclusions and your opinion upon the facts as given to you, what was the fair market or cash value of that automobile at the time the loss occurred, taking into consideration depreciation which had taken place as a result of usage, price reduction and other like conditions, upon the date of July 1, 1928? A. About $350." Up to this point there was no valid objection to either the question or the answer. The situation was wholly altered, however, by the cross-examination of the witness.

In the course of the examination, the following questions and answers appear: "Q. How do you fix the value of $350 as the actual value of this car prior to the accident? A. We just take the Blue Book value of it. Q. Is that what you are taking? A. Not now, no. The Blue Book value was about that at that time. Q. Is the estimate that you have given here, of $350, based on figures that you get from some book or is it based upon the knowledge that you acquired as an automobile dealer? A. Based upon the market value of the automobile at the time the appraisal was made. Q. Where did you get the figures from? A. We first get the figures from the Blue Book [interrupted at this point by plaintiff's counsel with request to strike out the testimony]. By the Court: Q. Now, do I understand you to say that you base the value now upon the figures that you obtain from the Blue Book? A. We do not base the absolute value of the car on the Blue Book; we take the Blue Book value as a start for arriving at the market value of the automobile. [At this point, request to strike out testimony was repeated.] By the Court: Q. And what else did you use then? A. And the matter of the fact that the automobile was out of existence, which made the depreciation of the car so much greater than a car that is under construction at the time. Q. Did you take anything else into consideration? A. No, I did not. Q. So that the only two things that you took into consideration were, first, the Blue Book value; and, secondly, the fact that the car was obsolete. A. Right. Q. And those are the only two factors? A. That is all." The court then granted the request to strike out the testimony. This action of the court is urged by the defendant as error.

The expert was an automobile dealer of twenty years' experience; he was acquainted with market prices in this vicinity at the time of the accident and with new and used Rickenbacker car values during the time he was in business. As an expert, who had not seen the car before the accident, he was called to express his opinion as to the market value of this car based upon a hypothetical question including facts which the evidence tended to establish. Upon these facts, interpreted by his special experience, he was to give his opinion as to value and not upon facts not stated to him, such as the contents of the Blue Book. He ignored every assumed fact in the hypothetical question, except obsolescence, such as condition, age, usage, and upon facts not in evidence rendered his opinion. Being called as an expert to render his opinion upon a hypothetical question, and not upon his personal knowledge of the facts, his testimony had to be based on an assumption of the truth of certain

facts hypothetically stated: 22 Corpus Juris, § 733, page 639. This principle was recognized by counsel for the defendant when he stated the hypothetical question. After stating the facts in evidence, he continued: "From your experience, and basing your conclusions and your opinion upon the facts as given to you," what was the fair market value, etc.?

The witness frankly told the court that his opinion was based alone on two facts, only one of which was in evidence, to wit, obsolescence—not being manufactured any more—and Blue Book value. An answer based partly on facts, gleaned apart from the trial and not included in the question, should be stricken out: 22 Corpus Juris, § 810, page 721; Com. v. Hazlett, 16 Pa. Superior Ct. 534, 552; 11 Ruling Case Law, § 10, page 578. And the reason is that the jury would have no possible way to determine what weight should be given to the opinion.

A situation quite similar to this arose in the recent case of Pietro v. P. R. T. Co., 298 Pa. 423 (1930), upon the cross-examination of a medical expert, which fact does not alter the principle involved, since the rules governing experts and their opinions based on hypothetical questions are identical. In the syllabus appears the following: "An expert witness may express an opinion on a state of facts which is set forth in a hypothetical question and assumed to be true, but not from those and other facts which are unstated or not assumed to be true. The opinion expressed by an expert witness should be stricken off if it appears by his cross-examination that it is based on matters other than those expressed in the hypothetical question upon which he gave the opinion, unless the question is so reworded as to embrace all the facts upon which his opinion is based." In the cited case, the lower court overruled the motion to strike out the previously expressed expert opinion. In holding this to be error, the Supreme Court (pages 428, 429) said: "This was clear error, for, under the facts as they then appeared, the opinion of the witness was partially based on unstated things said to him by plaintiff's family and others found in the brief of plaintiff's counsel. Under such circumstances, there was no possible way for the jury to determine what weight should be given to the opinion. Had it been shown that the statements made by the family and those appearing in the brief had been testified to at the trial and were assumed to be true when expressing the opinion, the jury would have been able to form an intelligent judgment regarding it, for the question would then have included all the facts on which the opinion was based; or had the witness later stated that his opinion would have been the same, even with those extraneous facts eliminated, the giving weight to them in rendering the expressed opinion would have been cured; but neither of these courses was pursued. In view of this, the error below is clearly pointed out in Howarth v. Adams Express Co., 269 Pa. 280, in which we said at page 283: 'An expert may express an opinion on an assumed state of facts which the evidence tends to establish, but not on what some one told him, nor on what he learned from another doctor, nor from the history of the case, we know not what, nor by whom communicated. An opinion based on such a question would naturally be misleading. The answer is also bad, for it does not show what had been given the witness as the history of the case, nor assume the truth of the evidence to which he had listened. See Becker v. Phila. R. T. Co., 245 Pa. 462; Yardley v. Cuthbertson, 108 Pa. 395; McDyer v. Eastern Pa. Rys. Co., 227 Pa. 641. In such case, an expert opinion cannot be based upon the facts not before the jury, Rogers on Expert Testimony (2nd ed., page 82); nor upon hearsay: Lawson on Expert and Opinion Evidence (2nd ed., page 266).'"

Another recent case is that of Scott et ux. *v.* Lindgren, 97 Pa. Superior Ct. 483, 487, where the court said: "Another witness who had never seen the car said he was 'familiar with this type,' and that there was 'a recognized standard of value of such car on the market that is generally accepted by the trade.' He was then asked whether he could 'tell . . . what was the fair market value on a 48-8 touring limousine Locomobile as of Feb. 1, 1928' (the date of the collision), and to this question the court sustained an objection. He was then asked to state the 'value of a 1924 model 48-8 touring limousine as given by the Red Book Authorities as of Feb. 1, 1928, and objection was again sustained. The record gives no information concerning 'Red Book Authorities.' There is nothing to indicate that plaintiff's car was of the market value so suggested, if the value had been stated; nor did defendant make any offer to prove what was the market value before collision."

The vice then of the expert's opinion is quite apparent, in that he based it, not upon the facts in evidence and stated in the hypothetical question, but he partially based it on facts or values in a Blue Book, not in evidence, and, therefore, precluded the jury from forming an intelligent judgment because not all the facts on which the opinion was based were before them: Pietro *v.* Phila. R. T. Co., *supra.*

After the evidence of the expert was stricken out, the defendant re-examined the expert in an effort to have the court change its ruling. In this examination it appeared that the Blue Book figures are put out by the automobile exchanges as the basic trade-in or market value prices for given cars at a given time; that in ascertaining market value, as a starter, the expert goes to the Blue Book and when a car is brought in to sell, the dealer is not governed by the Blue Book. But there was no evidence that the plaintiff's car was similar to or of the value of the "given cars" in the said book, or whether the "given time" was the time of the destruction of the plaintiff's car; and "basic trade-in or market value" was not the issue—certainly trade-in value [necessarily relating to the dealing of dealers in making sales and taking a car in part payment] is not market value. The market value of a second-hand car is such a sum as it will bring when offered to a person who is in the market for a second-hand car and who is willing to pay its just and full value. So many elements enter into it in a case of a second-hand car—such as care, condition, kind and length of use, age, mileage, and also in this case, the fact that it was no longer being manufactured. All these factors were suggested to the expert as the basis of his opinion and he repudiated all but the latter. This he could not do, as we have seen. He had not seen the car before the accident and was called upon to express an opinion on facts stated in a hypothetical question, and could not base his opinion on anything else. His competency as an expert was ruled favorably to him. And that the Blue Book values were unsafe he admitted when he testified that when a car is brought in to sell, "you are not governed by the Blue Book." Yet he used it with the factor of obsolescence as the basis of his opinion as to the market value of plaintiff's car.

The defendant urges that a witness may testify to the value of property if his knowledge of it has been derived through the general sources of information to which the ordinary business man resorts to inform himself as to values for the proper conduct of his affairs, and cites Chamberlayne, Handbook on Evidence, § 744. But this goes to his qualification as a skilled or expert witness. His acquaintance with special and generally accepted sources of information, coupled with experience in that particular line, makes him competent, but although qualified and a hypothetical question is addressed to him, he

must base his opinion on the facts as stated to him. There is a difference between the data constituting an expert's qualifications and resultant competency, and the facts forming the basis of his opinion.

The defendant cites the case of Struse v. Phila. R. T. Co., 87 Pa. Superior Ct. 46, 49, as a similar case. In the syllabus appears the following: "A duly qualified expert, who had seen the truck before the accident and had inspected it at the time it came into the shop after the accident, is competent to testify as to the depreciation of its value when other evidence as to its condition prior to the accident had been produced." The real question in that case was the competency of the witness on depreciation, as appears from the following (pages 48 and 49) : "The admission of the testimony of a witness who testified to the depreciation of the value of the truck presents a more serious question, but after careful consideration we conclude there was no error in the action of the court in allowing the testimony to go in. The witness formerly had been the manager of the used truck department of a large truck company, and his duties had been to appraise trucks which were to be traded in after they were returned for repairs. He had supervised the repairs and also sold trucks. He saw the truck involved in this accident before the time it was injured, and saw it in the shop several times previous to the accident. He did not make any particular examination of it—had not opened the hood and looked inside. It was a mere casual looking at the truck. It appeared on the trial of the case in the testimony of another witness that the truck was in good running order immediately prior to the accident. The expert testified by the inspection he made of the truck at the time it came into the shop after the accident that he had a knowledge of the degree of care or character of usage the truck had prior to the accident. The style and age of the truck had been stated. The witness knew the extent and details of the repairs. He had intimate knowledge of the work and methods employed in the shop. With all these facts, we think an expert could visualize or make a mental picture of the car after it was repaired so as to give a fair estimation of the depreciation."

We held Mr. Thornburg was competent because of his years of experience and special knowledge, even though he had never seen the car before the accident. The condition of the car had appeared in evidence, as did its age, use and the fact that it was no longer being manufactured. He knew its wrecked condition. And based upon these facts in evidence and stated in the hypothetical question, we permitted him to give his opinion of value, as in Struse v. P. R. T. Co., supra, and Pietro v. P. R. T. Co., supra; Wilhelm v. Uttenweiler, 271 Pa. 451, 455. But when he later repudiated these facts in evidence and substituted, as the partial basis of his opinion, facts not in evidence, we struck it out (Pietro v. P. R. T. Co., supra, 428), as his opinion was incompetent, but his competency as an expert still remained. Had he later corrected his cross-examination and based his opinion upon facts in evidence and included in the hypothetical question, we would have changed our ruling and left the weight of his testimony to the jury. At it was, the jury in no possible way could determine what weight should be given to his opinion: Pietro v. P. R. T. Co., supra, 428, 429.

The only other error complained of was the action of the court in refusing to permit the defendant, on cross-examination, to ask the plaintiff when the Rickenbacker automobile factory went out of business. If this was error, on page 10 of the testimony, it was amply corrected later. The fact that the Rickenbacker car was no longer manufactured and was not made on the date of the accident was introduced in evidence when every witness on both sides of the case, except the plaintiff himself, was examined, as appears by the tes-

644

timony on pages 24, 25, 31, 32, 35, 46, 47, 48, 50 and 54. The defendant, therefore, could not have been injured.

The motion for a new trial is overruled and judgment is hereby directed to be entered *sur* verdict in favor of the plaintiff and against the defendant upon payment of the jury fee.

From M. M. Burke, Shenandoah, Pa.