SAMUEL L. HAWKE, Appellant, v. JOHN CROSBY BROWN, Individually and as one of the Executors, etc., of JAMES BROWN, Deceased ; EDWIN P. THAYER and CHARLES R. HASTINGS, Respondents, Impleaded with Others.

*Negligence — inquiry as to skill, etc., required in the employment of an independent contractor to alter a building — what is not an interference with the work by the owner's agent — no duty exists to employ an architect.*

Certain real estate agents, who were intrusted with the supervision of a building in the city of Buffalo, and were authorized by their principal to make alterations therein, employed a contractor of apparently good standing in the community, who the agents after inquiry had been informed was competent to do the work (no right of control or direction of the work being reserved to the agents), and such agents submitted to the bureau of buildings of the city plans for the alterations, which, after being examined by the proper inspectors and altered in accordance with their suggestions, were approved.  While the work was in progress, a wall in the building fell, not because of any defect in the plans as approved, but because of its not having been properly supported as required by the plans and by reason of the premature removal of the shoring.

*Held*, that the fact of its fall did not, in the absence of proof that the agents participated in the acts occasioning the accident, afford a presumption that the agents were negligent in having employed the contractor, or render them liable for injuries sustained because of such accident by a person employed upon the work;

That the fact that one of the real estate agents, who had a general knowledge as to the construction of buildings, was about the building nearly every day and saw what was going on, but did not interfere with the methods adopted by the contractor, did not show such participation by him in the conduct of the work as would render the agents or their principal liable for the injury resulting from its defective execution;

That the failure of such agents to employ an architect to supervise the work did not constitute negligence.

APPEAL by the plaintiff, Samuel L. Hawke, from a judgment of the Supreme Court in favor of the defendant, John Crosby Brown, individually and as one of the executors, etc., of James Brown, deceased, entered in the office of the clerk of the county of Erie on the 9th day of September, 1897 ; also from a judgment in favor of the defendants, Edwin P. Thayer and Charles R. Hastings, entered in said clerk's office on the 30th day of October, 1897, upon a nonsuit granted by the court after a trial at the Erie Trial Term, and also from two orders entered in said clerk's office on the 11th day of

October, 1897, and the 30th day of October, 1897, respectively, denying the plaintiff's motion for a new trial made upon the minutes.

This action was brought to recover damages for personal injuries received by the plaintiff by reason of the fall of a building situated in Buffalo. The building was under the control and management of the defendant Brown, as acting executor and trustee, who lived in New York city. Defendants Thayer & Hastings were real estate agents, having their office in the building, and having general supervision over it, collecting the rents, negotiating with tenants and submitting the leases to Brown for his approval and signature.

On April 1, 1896, Thayer & Hastings, after submitting the matter to Brown, entered into a contract with defendant Luther, in and by which he agreed to provide all the materials and perform all the work mentioned in the specifications and shown on the drawings prepared by the Kellogg Iron Works, for the changes required to connect Nos. 8 and 10 Seneca street with No. 239 Main street; to remove all dividing walls and to replace with steel beams and iron columns; also to build new walls where shown and strengthen old walls as directed by the architect, as shown on the plans and specifications, and to make such other repairs as were agreed upon by both parties.

The plans referred to originated as follows: Prior to the date of the contract Luther had submitted to the Kellogg Iron Works a rough sketch of what was proposed to be done, and the latter prepared a plan, which was filed with the bureau of buildings on April 1, 1896. It was examined by Kavany, the mason inspector of the bureau, and by Houck, the structural engineer of the same. The building was examined by both of these inspectors with reference to the proposed repairs and alterations. All the work that was to be done was explained by Luther to Kavany. Kavany examined very carefully the dividing wall down to the foundation in the cellar, where it was a sixteen-inch wall; told Luther that there must be brick piers put in to support the iron columns, and, to assure the sufficiency of the masonry work, made the notation on the plan, " Allow brickwork to carry 7 tons." Houck, the iron inspector, made a careful inspection of the plan and of the building, and made certain alterations, increasing the number of columns and changing their size. To these

changes he called the attention of the engineer of the Kellogg Iron Works. After these examinations and changes were made, and the directions as to the masonry added to the plan, it was approved by the inspectors, in writing, on the 2d of April, 1896, and the permit of the bureau to make the repairs and alterations was given on the following day. Luther made a sub-contract with the Kellogg Iron Works for the construction and erection of the iron work, and contracted with Straub to do the necessary shoring, and, also, it would seem, to do some of the mason work.

On the morning of the 21st day of May, 1896, a portion of the building fell down, injuring the plaintiff, who was there doing carpenter work. The evidence tends to show that it fell because the columns were erected on plates placed on the center wall, instead of on piers built up from the foundation to carry them, or on a girder laid along the wall, which would have distributed the weight, and because also of the premature removal of the shoring. In other words, either Luther or his sub-contractor was guilty of negligence in the construction of the support for the iron columns, to which the accident was due.

The plaintiff was nonsuited and now brings this appeal.

*Philip A. Laing*, for the appellant.

*John George Milburn*, for the respondent Brown.

*Wallace Thayer*, for the respondents Thayer & Hastings.

GREEN, J.:

The appellant contends that the respondents were chargeable with negligence in the selection and employment of an incompetent contractor to perform the work required.

It is alleged in the complaint that Luther was then " engaged in business as a practical carpenter, mason and builder ; " but that he had no theoretical or practical knowledge of building or mason work ; that he possessed none of the experience, knowledge or qualifications necessary for a contractor to make the alterations provided for by the contract ; that he was wholly without the information usually possessed by contractors, builders and masons, and was wholly unfit and incompetent to enter into said contract, or to over-

see or supervise the work. It is then averred that the respondents knew that Luther was not a skillful or experienced builder, contractor or mason, or competent to undertake the work of making these alterations.

These allegations were not proven.

The evidence was insufficient to warrant the submission to the jury of the question of Luther's incompetency as bearing on the question of the respondents' negligence in employing him to do this work. Assuming that he was not a sufficiently skillful and careful contractor, as it appears from subsequent occurrences, there was no evidence upon which to base a finding that the respondents, or either of them, had knowledge of such incompetency, or that they were negligent in failing to exercise due and reasonable care, under the circumstances, in ascertaining the fact. On the contrary, the appellant introduced in evidence the testimony of the respondent Thayer given before the coroner's jury, from which it appears that Thayer made inquiries in regard to Luther, and was informed that he was competent to do the work; that a certain individual recommended him, and the witness was satisfied that he was a capable contractor. Thayer also had written to his principals that the contractor was a reliable one to the best of his knowledge. The plan of the contemplated improvements required the approval of the bureau of buildings, and the respondents were warranted in believing that Luther was competent to carry out the work so approved, or they were not negligent in entertaining such belief. The circumstances, at least, do not warrant the imputation of negligence. Luther followed the vocation of a contractor, and the alteration and repair of buildings appear to have been within the scope of his business. He held himself out as able and competent to perform work of this character, and there is no proof that he was known or reputed to be incapable or incompetent for the purpose. So far as appears he was a building contractor in good standing in the community.

Under what circumstances may an employer be held liable upon the ground of negligence in selecting an incompetent and reckless contractor? What degree of care is required? Is knowledge of the incompetency essential? If the person selected is following, for his vocation, the particular employment and holds himself out as competent therein, and the employer has no knowledge of his incom-

petency, but innocently believes him to be a competent and careful man, may he forbear further inquiry?

An able and careful author on negligence makes this statement: "Some of the judges, in their opinions, have qualified the rule (as to independent contractors) by assuming that it is only applicable to cases where the proprietor has not been guilty of negligence in awarding a contract to a person incompetent, habitually negligent, or otherwise unfit to be intrusted with it. No case has been found, however, where a proprietor has been held answerable for the negligence of an independent contractor upon this ground alone." (2 Thomp. Neg. 908.)

In an action against the city of New York for damages caused by negligent blasting in excavating a street, the plaintiff offered to prove that the contractor who did the work " was notoriously incompetent and incapable to perform the work." The offer was excluded, and the appellate court remarked that "the offer was not broad enough in offering merely the fact of the contractor being notoriously incompetent, without showing that the defendants had knowledge of such incompetency at the time of employment, or such facts as would show them guilty of negligence in making such contract. The corporation are not to be presumed to know more than other bodies corporate or individuals; and if they are sought to be held liable for employing improper persons to do the work of the public, it can only be after knowledge of such incompetency is shown." *Kelley* v. *Mayor, etc., of New York,* 4 E. D. Smith, 291.)

This decision seems never to have been questioned or disapproved, in express terms, by any subsequent decision of the courts of this State. It was rendered subsequent to the decision in the same case reported in 11 New York, 432, and was not reversed thereby, as is erroneously stated in many of the books.

In *Berg* v. *Parsons* (84 Hun, 60) the action was for damages caused by negligent blasting on defendant's premises, resulting in injuries to plaintiff's house. It appeared that the only steps taken by the defendant to ascertain the competency of the contractor was to inquire of a lawyer's clerk; and he also claimed to have seen a piece of blasting done by the contractor which was reasonably well done. "But from all information that the defendant got in respect to the

capabilities of the contractor, he was not informed that he had ever done the kind of work called upon to be done upon this occasion. He had done some blasting for sewers, but nobody ever knew that he had excavated a cellar. We think, therefore, that the defendant did not, so far as this record discloses, perform that duty which is incumbent upon a man who is about to employ another to do a dangerous piece of work." The jury found that the defendant was negligent in this regard, but the verdict was set aside for errors committed on the trial.

The case of *Norwalk Gaslight Co.* v. *Borough of Norwalk* (63 Conn. 495) was also a case of negligent blasting. The court charged the jury that if the contractors were unskillful and incompetent to perform the work, and the defendant, knowing this, employed them, then the defendant would be liable for their negligence.

It was held that this charge was erroneous and imposed upon the defendant a too limited measure of liability ; and that the defendant " would be liable as stated, not only in consequence of negligence, which would certainly be most gross in knowingly employing incompetent contractors, but also in failing to exercise due and reasonable care to select such as were skillful and competent."

As there is no evidence that the respondents did not exercise due and reasonable care in selecting the contractor, we are not called to declare what is, or should be deemed, the true principle of liability applicable to cases of this character. The fact that the contractor was negligent in respect of the work in question, afforded no presumption that the respondents were guilty of negligence in having employed him. The respondents had the right to place reliance upon the supposed qualifications and good character of the contractor, and were not bound to anticipate misconduct on his part ; so that, to make them responsible in this case, some participation in the particular acts through which the accident occurred must be brought home to them or some proof given that they negligently omitted to perform some legal duty owing to third persons, notwithstanding the existency of the contract.

The appellant asserts that the respondents are chargeable with the consequences, upon the ground that Thayer personally supervised and controlled the work.

The general rule is, that one who has contracted with a competent

and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful, or attended with danger to others, according to the contractor's methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractors, or his servants, in the prosecution of such work. (2 Thomp. Neg. 899, 909, 910; and see *Hexamer* v. *Webb*, 101 N. Y. 377, 383; *Engel* v. *Eureka Club*, 137 id. 100.)

The rule is thus well expressed by SHARSWOOD, J., in *Ardesco Oil Co.* v. *Gilson* (63 Penn. St. 146): "It may be considered as now settled that if a person employs others, not as servants, but as mechanics or contractors, in an independent business, and they are of good character, if there was no want of due care in choosing them, he incurs no liability for injuries resulting to others from their negligence or want of skill."

When a contractor takes entire control of the work, the employer not interfering, the employer — supposing there was no negligence in the selection of the contractor, and that the work contracted for was lawful — is not liable to third persons for injuries to such parties by the contractor's negligence, or the negligence of his subordinates. But any interference, assumption of control or directions given by the owners of buildings, being erected for him by contractors, under a special agreement, may render him personally liable for injuries caused to third persons by the negligent conduct of such contractors, in work done in obedience to such directions. (*Heffernan* v. *Benkard*, 1 Robt. 432.) In other words, the employer may make himself liable by interfering with the contractor and assuming control of the work, or some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference. But the mere fact that the employer retains a general supervision over the work for the purpose of satisfying himself that the contractor carries out the stipulations of his contract, does not make him responsible for the negligence of the contractor. (2 Thomp. Neg. 913.)

If the injury occurred in consequence of the negligent or unskillful performance of the work, the employer is not liable, provided he did not interfere with, and assume control of, and actually control, the work and the method and means of its performance. It is

true that it is not the fact of actual interference and control, but the right to interfere, which makes the difference between an independent contractor and a servant or agent. But when, as in this case, the relation is the former, it is then correct to say that the liability of the employer, in such cases, arises from the fact of actual interference and control. (*Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 525.)

This principle appears to receive recognition in *Morton* v. *Thurber* (85 N. Y. 550, 559), notwithstanding the last clause in the following quotation from the opinion of RAPALLO, J., viz.: "The only point made by the appellant in this branch of the case is that the rule that the owner of premises is not liable for the negligent conduct of a contractor is not applicable, for the reason that the defendants in person directed portions of the work, but the finding, in this respect, does not disclose the nature of these directions, or that they had any connection with the injuries sustained by the plaintiff; on the contrary, the referee found that these were inflicted without the fault and against the wishes and advice of the defendants."

The evidence is insufficient to warrant a submission to the jury of any question as to the respondents' liability upon this ground.

There is no testimony that Thayer gave any directions as to how the ironwork or masonry work should be done, or about the removal of the wall between Nos. 8 and 10 Seneca street, or about the foundations of the iron columns. Indeed, it does not appear that he gave any directions whatever in respect of the methods of proceeding with the work, or that he exercised the right or power of directing and controlling the contractor as to the manner of its execution, or that any directions he may have given had any connection with the accident, or that the consequence was traceable to his interference.

No right of control or direction of the work was reserved by the the respondents in the contract. All that appears is, that Thayer was about the building nearly every day and saw what was going on. No doubt he possessed a general knowledge as to building constructions, but he was not a builder and did not, apparently, possess such a theoretical or practical knowledge of the subject as would warrant his interference in directing the contractor in the method or mode of construction.

"It would be unreasonable to require an unskilled person to point out to a skilled person in what way the work should be done." (*Earl* v. *Beadleston*, 42 N. Y. Super. Ct. 300.) He could not properly do so, for the contractor is generally skilled in the business, and the employer is not.

It is argued that the dangerous character of the mode of working was patent, and that Thayer must have been aware of it. If that were so, it would naturally be expected that he would have taken some means to prevent or avoid the catastrophe. Workmen of experience were engaged upon the work, and yet they made no complaint that the building was in danger of collapsing.

It is also contended that the respondents failed to file with the superintendent of buildings sufficient plans and specifications for the contemplated alterations or improvements, as required by section 292 of the city charter (Chap. 105, Laws of 1891), and the omission to do so is asserted as a basis of liability for the negligence of the contractor in the execution of the work. The charter provision relates to "the construction or remodeling of any building," and it is argued by the respondents that the alterations provided for in this contract did not amount to "a remodeling" of the building, within the meaning of this requirement; that to remove a partition wall on the ground floor between two of the small stores on Seneca street and the rear wall on the same floor so as to open into the Main street store, was not a remodeling of this large building; that it is plans and specifications "of such building" which are required to be filed, and that requirement cannot be construed to apply to alterations of the character described; that what the statute covers is the original construction or reconstruction of an entire building, and that these improvements were properly described in the statement as "alterations," which statement was accepted by the bureau of buildings and a permit issued, after investigation and examination of the contemplated improvements by its officials.

It is not necessary, however, to determine whether these alterations constituted a remodeling of the building. A "plan" was filed with the bureau showing the walls to be removed and the iron work to be substituted, giving dimensions and sizes. Full explanation of what was proposed to be done was made to the masonry and iron inspectors of the bureau, both of whom carefully examined the

building and the plan. The iron inspector made alterations in the plan touching the number of columns and their size. The masonry inspector inspected the masonry and noted the necessary directions on the plan as to it. The plan as so altered and amended was approved and the permit issued. Appellant's counsel argues that this plan or "blue print" did not comply with the statutory requirement; that it was neither a plan, nor did it contain specifications of the proposed alterations, and the fact of its acceptance by the bureau was no protection whatever to the proprietors of the building. To this contention we cannot assent. The proprietors did all that was required of them by the officials, and if the latter deemed the plan to be adequate and sufficient for the purpose intended, and as a substantial compliance with the charter, it is difficult to perceive how they can justly be charged, under such circumstances, with a violation of a statutory duty. We agree with the argument of respondent's counsel that the sizes and dimensions given on the plan were *prima facie* sufficient specifications; that if the officers of the bureau had desired further specifications they could have asked for them; and not having asked for them, and having acted upon the data submitted as sufficient and issued the permit, there was a substantial compliance with the statute, even if it applied to these alterations, and third persons are not in a position to claim that other data should have been submitted. Necessarily the bureau is vested with the power to determine the sufficiency of the plans and specifications for the proposed alterations, and for an error of judgment on their part the owner or proprietor is not responsible.

It appears, moreover, that the accident happened, not because of any negligent defect or imperfection in the plan as approved, but because the plan as approved was disregarded. We do not understand the counsel for appellant to maintain that the cause of the accident was attributable to anything connected with the plan upon which the permit was granted. On the contrary, his complaint is that the notation made by the official building inspector upon the plan filed, viz., "allow brickwork to carry 7 tons," *was wholly disregarded;* that the only plan that was used while the work was in progress was the one furnished by the Kellogg Iron Works, and that plan did not contain the words quoted; that the duty rested upon the respondents to see that the building was constructed in accord-

ance with the plans and specifications filed and approved; that they were responsible for the contractor's negligence in not procuring for the sub-contractors and their subordinates a truthful copy of the plans and specifications as approved for their guidance. Evidently that was the duty of the contractor and not of his employers. The whole matter was left to his entire control, and he was negligent in failing to impart the necessary information to the sub-contractors.

Luther undertook by his contract to remove the wall and substitute iron columns to support the girders necessary to carry the wall above the ground floor. The obligation imposed upon him by his contract was to do the work properly and in accordance with the approved plan and the instructions given by the official inspectors. The wall fell because of the negligence of the contractor, or his sub-contractors, in the manner in which the work was done.

The iron columns were placed on plates resting on the center wall, instead of on piers or on a girder, which would distribute the weight or strain, and the shoring appears to have been prematurely removed. Negligence in doing the work caused the accident.

Appellant further contends that the failure of the respondents to employ an architect in connection with these alterations, as contemplated by the contract, was, taken in connection with all the other circumstances of the case, an element of negligence for the consideration of the jury.

The contract provided that the work should be done to the satisfaction of Mr. Esenwein, architect; that no alteration should be made in the work shown or described by the drawings and specifications, except upon his written order, etc. This provision was disregarded, except in so far that the architect was engaged to pass upon the work when completed, and Thayer testified that he intended to have him in case of an emergency.

" The proprietor usually retains control by a skilled architect, not for the purpose of controlling the contractor in his methods, but for the purpose of assuring himself that the results enumerated in the specifications of the contract are reached by the contractor, step by step, as the work progresses." (2 Thomp. Neg. 914.)

There is no authority for the proposition that the employment of an architect to make plans and specifications for work of this character and to supervise the work in its progress to completion is a

legal duty owing by the employer either to the contractor or to third persons. We are not aware of any such rule of law. An architect is usually retained for the protection of the proprietor. If there was no negligence imputable to the proprietor in the employment of the contractor, or negligence in other respects, the failure to employ an architect does not constitute a breach of duty owing to the public, and is no evidence of negligence in the execution of the work.

In this case, certainly, there can be no liability on any such ground, considering that the contract was made with a builder believed to be a competent and careful man; that the work was to be done according to a plan which had been examined and approved by the bureau of buildings; that, had the work been done in accordance with the plan as approved by the official inspectors, there probably would have been no accident, and that the work when completed was to be approved by the architect. In view of these circumstances, we are unable to perceive that the non-employment of the architect was a contributing cause of the accident. The respondents relied to some extent, and were justified in relying, upon the presumption that the officers of the bureau would properly perform the duties imposed upon them by the charter and ordinance and the rules prescribed for their guidance.

It is asserted by appellant that Thayer was warned of the danger of proceeding without the advice of an architect, but the testimony as to this had no relation to these improvements and alterations.

From the views thus expressed, it follows that we are of the opinion that the learned justice at Trial Term was justified in granting a nonsuit and in denying the motion for a new trial on the minutes.

The judgment and order should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred; ADAMS and WARD, JJ., dissented.


ADAMS, J. (dissenting):

It is an undisputed fact in this case that the defendants Thayer & Hastings, as the agents of the defendant Brown, were charged by their principal with the supervision of the work to be performed

under the contract with the defendant Luther for the reconstruction of the building in question.

On the 24th day of April, 1896, the defendant Brown wrote Thayer & Hastings as follows: " We, of course, rely on your careful observation as regards the specific and proper carrying out by Mr. Luther of his contract, and when finished, as to its completeness."

In response to this letter the parties to whom it was addressed, under date of April twenty-fifth, say: " Please accept our thanks for your reliances and confidence in us, which we will assuredly exert ourselves to merit in attending to your best interests in the matter — *looking to the details of the work as it progresses and making payments only after it is properly and thoroughly done.*"

The defendant Hastings testified that he and Thayer knew that it was their duty to watch Luther and see that he fully performed his contract, and he further testified that before making payments he personally inspected the work.

It also appears that both Thayer and Hastings were men of experience, and that one, if not both, of them was quite familiar with the business of constructing and reconstructing buildings by contract. It is quite obvious, therefore, that if they had been at all faithful to the obligation which was cast upon them by their principal, as they assured him they would be, they must have observed the means employed by Luther to perform the work called for by his contract, and they must also have known that he was performing that work regardless of the instructions of the bureau of buildings in the city of Buffalo, and in a manner which was grossly negligent.

It is impossible to read the record in this case without reaching the conclusion that the proximate cause of the disaster which resulted in the plaintiff's injuries was the violation of or failure to observe the instructions given by the city inspector of buildings; and it seems equally clear that men of average intelligence and ordinary experience not only ought to have known that these instructions were not being observed, but they ought to have anticipated just the result which followed their non-observance.

In these circumstances, it seems to me that the doctrine invoked by the defendants, and which is laid down in a line of cases of which

*Engle* v. *Eureka Club* (137 N. Y. 100) is a type, has no application, but that the question here presented is similar in principle to that involved in the case of *Pitcher* v. *Lennon* (12 App. Div. 356). In other words, I think that Thayer and Hastings were clearly guilty of misfeasance, for the consequences of which both they and their principal should be held responsible.

For these reasons, I am constrained to dissent from the prevailing opinion, and to vote for a reversal of the judgments and orders appealed from.

WARD, J., concurred.

Judgment and order affirmed, with costs.