## Quinlan & Robertson, Inc., Appellant, *v.* Rundle et al.

*Appeals—Exception—Evidence—Motive—Fundamental error.*

1. A court is not authorized to inquire into the motive of one who has only exercised a clear legal right.

2. Upon a general exception only basic and fundamental errors will be considered.

*Conspiracy—Confession—Evidence.*

3. Proof that one of two alleged conspirators admits his guilt, does not establish the guilt of the other.

4. An allegation of conspiracy can only be established by full, clear and satisfactory evidence that the parties had combined to do an unlawful thing, or to do a lawful thing in an unlawful manner, that the intent so to do was common to each, and that each understood the other had that purpose.

*Practice, C. P.—Refusal of point without reading it—Trial.*

5. The court may refuse a point without reading it, if the subject-matter thereof has been fully covered in the general charge.

*Practice, C. P.—Pleading—Statement of claim.*

6. Recovery can be had only upon the basis set forth in the statement of claim.

*Replevin—Title—Possession—Refund of money — Maxim — He who seeks equity must do equity.*

7. In an action of replevin, where it appears that defendant, acting in good faith, had paid the former owner of the property

replevied a sum of money to obtain title and possession thereof, which neither party could have obtained without making such payment, plaintiff must refund or offer to refund the money thus paid or his action will be dismissed.

Argued March 7, 1922. Appeal, No. 284, Jan. T., 1922, by plaintiff, from judgment of C. P. Berks Co., March T., 1920, No. 46, on verdict for intervening defendant, in case of Quinlan & Robertson, Inc., v. Milton B. Rundle and Fred P. Behm, trading as Rundle & Behm, Ernest B. Posey, intervening defendant. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Replevin for steam shovel. Before ENDLICH, P. J.
The opinion of the Supreme Court states the facts.
Verdict and judgment for Ernest B. Posey, intervening defendant. Plaintiff appealed.

*Errors assigned* were various instructions, appearing by the opinion of the Supreme Court, quoting record, and refusal of plaintiff's motion for judgment n. o. v., quoting record.

*Cyrus G. Derr* and *E. H. Deysher,* for appellant.—If, on September 13, 1919, when Rundle & Behm, by their written agreement of that date, gave to appellant the steam shovel here in question, and the other steam shovel not here in question, Rundle & Behm had no title thereto and no right so to give the said shovels to appellant, then

When subsequently Rundle & Behm by bills of sale from the Ball Engine Co., owner, acquired a title to the shovels, that title instantly inured to appellant under the familiar principle of law that one who sells without title and later acquires a title, is trustee thereof for the vendee and Rundle & Behm having such title could not give that title to Posey.

Appellant's possession of the shovel was of itself notice to him of appellant's relation to and equity in the shovel: Rowe v. Ream, 105 Pa. 543.

*H. P. Keiser,* for appellee, cited: Benford v. Sanner, 40 Pa. 9; Merchants & Mfg. Nat. Bank v. Tinker, 158 Pa. 17.

OPINION BY MR. JUSTICE SIMPSON, March 27, 1922:

Quinlan & Robertson, Incorporated, the plaintiff in this case, issued a writ of replevin against Rundle & Behm to recover a steam shovel; Ernest B. Posey, being given leave to intervene and defend, entered a counter-bond, retained the shovel and pleaded his ownership; judgment by default was entered against Rundle & Behm, but on the trial of the issue between plaintiff and Posey the latter obtained a verdict, judgment was entered thereon and plaintiff appeals. No question is raised touching the evidence admitted or offered; hence it is only necessary to set forth in this opinion such a statement of the facts as will enable the assignments of error to the charge to be properly considered.

Plaintiff had a contract with the Commonwealth for the building of a portion of one of the state highways, and entered into a subcontract with Rundle & Behm by which they were to do a portion of the work within a specified time. For this purpose they leased from the Ball Engine Company of Erie two steam shovels (one of which is the subject of this controversy), paying as down money $1,975.95, and giving eight promissory notes for $735 each, payable thirty days apart, the Engine Company agreeing that, upon payment thereof, Rundle & Behm should have the right to purchase the shovels on paying an additional sum of one dollar and the cost of all parts and supplies which the Engine Company furnished during the term of the lease. The lease stipulated, inter alia: "The lessee agrees that said shovel shall not be sublet without the written consent of the

VOL. CCLXXIII—31

lessor; also that if any portion of said rental shall not be paid as herein specified, or if any of the provisions of this lease be violated, the rental for the full period shall become due and payable forthwith, and the lessor may at its option take possession of and remove said shovel without legal process."

Rundle & Behm made the initial payment and also paid two of the notes; thereafter they and plaintiff (being of opinion the subcontract could not be finished within the time specified), entered into a new agreement by which plaintiff undertook to complete the work provided for by the subcontract, and, in consideration thereof, Rundle & Behm agreed to sell to plaintiff "all of their right, title and interest in plant and equipment now on the site of the works, same to be used by Quinlan & Robertson, Inc., in the performance of this agreement, as intended in the original contract [between them] . . . . . As hereinafter provided for, Quinlan & Robertson, Inc., agreed to hold this plant and equipment for, and resell it to Rundle & Behm at the site of the works on the completion of the operations covered by this agreement, in good running order, and in as good condition as when received, ordinary wear and tear excepted, [and also] agree to meet the payments of seven hundred and thirty-five dollars ($735) per month on each of the two (2) Erie Shovels, making fourteen hundred and seventy dollars ($1,470) per month, which shall be advanced in payment of the purchase of said shovels, until said shovels are released by Quinlan & Robertson, Inc., at which time, should there be a balance due Quinlan & Robertson, Inc., under this agreement, Rundle & Behm shall reimburse Quinlan & Robertson, Inc., for their shovel payments, together with interest on same, or in the event of their failure or inability to make this payment, Quinlan & Robertson, Inc., have the right to, and may, clear any indebtedness due the manufacturer on these shovels, and the title of ownership shall rest in Quinlan & Robertson, Inc., until such indebtedness and the payments with in-

terest on the shovels is satisfied and paid." It is evident that, so far as concerns the shovel itself, this paper could only operate as a transfer of Rundle & Behm's leasehold interest, for that is all they had, and hence, in legal effect, it was a subletting, which was forbidden by the lease.

By virtue of this agreement plaintiff took possession of the shovel and made four payments of $735 each but defaulted in the fifth payment, now alleging that this resulted from a failure of Rundle & Behm to comply with a verbal agreement to notify plaintiff's bank that the note had been presented for payment. The engine company had no notice of either the written or oral agreement between plaintiff and Rundle & Behm, and hence was not affected thereby. Subsequently Rundle and Posey together notified the officers of the engine company of the default in payment and of the subletting of the shovels; whereupon it cancelled the lease and took possession of them. Learning of this, plaintiff offered to pay the engine company the balance due to it, if it would deliver the shovels to plaintiff; Posey made the same offer; the engine company refused, however, to comply with either request and made a bill of sale to Rundle & Behm, which the latter assigned to Posey, in consideration of his paying the whole balance due; the engine company's representative thereupon delivered the bill of lading for the shovel to Posey and not to Rundle & Behm, and he alone obtained possession of it.

This action of replevin was then begun; plaintiff attached to its declaration a copy of the lease between the engine company and Rundle & Behm, averred that the engine company retook possession but later transferred title to Rundle & Behm, who in turn transferred it to Posey, and claimed to recover against the latter solely upon the ground that "the said Rundle & Behm and the said intervening defendant Ernest B. Posey, have combined and conspired together to defraud the plaintiff of

the said steam shovel and of its right thereto, and interest therein, and its right of possession thereof."

It is clear from the foregoing, that the engine company's title to the shovel was never lost, that in cancelling the lease and retaking possession it was only exercising a clear legal right, reserved to it by the lease, and hence its motive in so doing, even if challenged, would be a matter of no moment: Scott v. Pittsburgh, 266 Pa. 52; Roush v. Herbick, 269 Pa. 145. In this light we turn to the charge, the accuracy of which is the only subject to be considered, to see whether any of the assignments disclose error prejudicial to plaintiff.

The only exceptions taken at the trial were to the refusal of certain of plaintiff's points and the usual general exception, under which latter we can consider only basic and fundamental errors: Sikorski v. Phila. & Reading Ry. Co., 260 Pa. 243; Laughner v. Wally, 269 Pa. 5. The extracts from the general charge assigned as error, however, do not allege anything basic and fundamental, and hence they are beyond review.

In one point the court was asked to say that the default judgment against Rundle & Behm was conclusive on Posey also; that is, because one of two alleged conspirators admits his guilt, the other is, by reason thereof, likewise conclusively determined to be guilty. Of course this cannot be.

It was likewise asked, in various other forms also, to give binding instructions for plaintiff; but as conspiracy was the only matter charged, the burden of proof of which was upon plaintiff, requiring it to establish by "full, clear and satisfactory evidence" that Posey and Rundle & Behm had combined "to do an unlawful thing or to do a lawful thing in an unlawful manner," and "that each had the intent [to defraud] and that it was common to each of them, and that each understood the other had that purpose" (Ballantine v. Cummings, 220 Pa. 621, 630), the case was necessarily one for the jury. This is so despite the fact that Posey went with Rundle at the

time the engine company determined to retake possession, for it does not necessarily follow therefrom that he had a wrongful motive; he might well have been protecting his own interests, and since the determination of this question depended on testimony, it was also for the jury's consideration: Fuher v. Westmoreland Coal Co., 272 Pa. 14.

In another point the court was asked to charge that, because of the agreement between plaintiff and Rundle & Behm, when the latter subsequently acquired title from the engine company, it immediately inured to the benefit of plaintiff; but this is not the claim set forth in the declaration and hence cannot be a basis of recovery. Besides, the trial judge, in the general charge, unqualifiedly affirmed the proposition of law embodied in this point; under such circumstances he was justified in refusing the point without reading it to the jury: Com. v. Lewis, 222 Pa. 302. Moreover, the court below should have refused to submit the question to the jury for another reason also. Admittedly Posey paid to the engine company a sum of money, without the payment of which neither he nor plaintiff could have acquired title to the shovel; in view of this, if the jury found he acted in good faith, before the purchase could inure to plaintiff's benefit, it was bound to pay or tender to him the sum thus necessarily expended (which it has never done), for the right so claimed is an equitable one, and "he who would have equity must do equity." On the other hand, if the point should be considered as covering the case of his acquirement of title in bad faith (though it does not say this, and hence cannot be so treated), then as the only bad faith averred or proved is that involved in the alleged conspiracy, the point stated nothing new for the jury's consideration, and the finding that there was no conspiracy is as conclusive on this phase of the case as it is on the other.

For the first of these reasons, and because also, so far as relevant to the issue, they were fully dealt with in the

general charge the other two points quoted in the assignments of error, and not hereinbefore considered, were properly refused without reading them to the jury, viz: (1) That plaintiff's possession of the shovel was notice to Posey of its "right, and title to, and interest" therein; and (2) That Rundle & Behm could not lawfully avail themselves of the right of the engine company to disturb plaintiff's possession. Moreover, the first fails for the further reason that Posey had none the less the right, openly and above board, to endeavor to secure himself (Bedford v. Sanner, 40 Pa. 9, 19); and the second because it did not affect Posey's rights but only Rundle & Behm's and this, so far as they were concerned, was concluded by the default judgment against them.

The judgment of the court below is affirmed.