Fuller *v.* Palazzolo et al., Appellants.

Argued September 28, 1937.  Before Kephart, C. J.,
Schaffer, Maxey, Drew, Linn and Stern, JJ.

*William W. Knox,* with him *Robert J. Firman,* for appellants, Nos. 112 and 113.

*Henry A. MacDonald,* with him *A. Grant Walker, W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,* for appellant, No. 109.

*T. P. Dunn,* with him *William J. Dale, Wayne Gleeten,* of *Hosbach & Gleeten,* and *John E. Dwyer,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 31, 1938:

Plaintiff, on behalf of herself and two minor children, brought an action in trespass to recover damages for the death of her husband, Merle Fuller. The latter, while mowing a lawn at about 2 p. m. on June 7, 1934, was run down by a "truck-tractor" to which was attached a "semi-trailer," i. e., a trailer-chassis (hereinafter referred to as the trailer), which truck, apparently being out of control and running at an excessive rate of speed, left the north side of the pavement and hurtled onto the lawn where Fuller was working, instantly killing him. This lawn was located near the village of Harborcreek, Erie County. The trailer which was attached to the truck was the property of codefendant, the Fruehauf

Trailer Company (hereinafter referred to as the trailer company), a Michigan corporation engaged in the manufacture of trailers, which entered into a contract with Palazzolo, the owner of the truck, for him to tow the trailer from its plant in Detroit to a customer in Buffalo, New York. The consideration was $40. DeWall, the driver of the truck, was an employee of Palazzolo. He went to the delivery yard of the trailer company and secured the "Heavy Duty Fruehauf Semi-trailer" for transportation on its own wheels, but *not* under its own power, to its destination. This trailer had affixed to its rear a license tag of the trailer company. The truck-tractor with certain accessories, weighed about 4,200 pounds and the trailer weighed about 3,000 pounds.

According to undisputed testimony, the accident occurred when the left front wheel of the truck-tractor "locked" as the driver swung to the left to pass an automobile which had stopped on the highway in front of him. This "locking" of the wheel was, according to testimony, due to grease which had gotten in between the brake lining and the drum, this fact being additional evidence of want of care on the part of the owner of the *truck-tractor* and his employees. The truck went over 250 feet before it could be stopped and within that space it rolled a rock two feet or more in diameter over thirty feet, and then struck the deceased. Witnesses testified that the speed of the truck was from forty to forty-five miles an hour. The driver said he was operating it from 35 to 37 miles an hour.

The statement of claim charged "each and all the defendants" with negligence in the following particulars: "(a) in violating the statutes of the State of Pennsylvania pertaining to brakes, (b) in hauling a heavy semi-trailer without brakes of any kind in service, (c) in having the brakes of the truck inefficient and faulty, (d) in violating the statutes of the State of Pennsylvania pertaining to speed and control of trucks and semi-trailers on the highways, (e) in operating the truck

and semi-trailer at a speed of approximately forty-five miles per hour." The other allegations were violations of the statutes pertaining to passing motor vehicles, passing another motor vehicle at a high and dangerous rate of speed, and general negligence.

Suit was brought against "each and all" three defendants without any differentiating between them, to wit: Palazzolo, the owner of the truck, De Wall, the driver, and the Fruehauf Trailer Company, the owner of the trailer.

After trial the jury returned a verdict against all three defendants and in favor of plaintiff and her children in the sum of $9,513.50; $513.50 was for funeral expenses. All defendants filed motions for new trial and for judgment n. o. v. After argument the court in banc overruled the motions and ordered judgment entered on the verdict. Thereafter the court in banc heard a reargument on the motions and again discharged them. These appeals followed.

This case naturally divides itself into two parts: (1) the alleged negligence of defendants Palazzolo and De Wall, and (2) the alleged negligence of the Fruehauf Trailer Company.

In the appeal of Palazzolo and De Wall, the first "question involved" is as follows: "Was it prejudicial error for the court to instruct the jury that on June 7, 1934, the law of Pennsylvania required brakes on truck tractors and semi-trailers to be connected, and to refuse to instruct that there was no such requirement in the law?" This alleged error forms the fifth "error" assigned by these two defendants. This assignment will be discussed in connection with the sixth and twelfth assignments. The sixth is based upon the refusal of the court below to affirm defendant's sixth point as follows: "The laws of Pennsylvania do not require that brakes on semi-trailers be connected with those on the truck-tractor and failure of the defendants in this case so to connect the brakes of the semi-trailer with those

of the truck-tractor cannot be considered as negligence on their part, unless you find that a reasonable and prudent man under these circumstances would have so connected these brakes." The twelfth assignment is based upon the overruling of defendants' motion for a new trial.

In its opinion refusing a new trial and refusing judgment n. o. v., the court said: "This [6th] point might have been affirmed, for at the time of the accident there was no requirement that the brakes on the trailer be connected with those on the tractor (since changed by Section 2 of the Act of July 16, 1935, P. L. 1056). But this point was refused without reading and its refusal therefore does not constitute grounds for a new trial since the subject matter of the point was fully covered elsewhere in the general charge. See *Quinlan & Robertson v. Rundle,* 273 Pa. 479 [117 A. 208]."

The applicable portion of the court's charge is as follows: "You would have to find that there was negligence in the operation of this truck which was the proximate cause of the injury sustained, before you could find a verdict against the defendants, or any of them. Even though it were required by law, as it seems to be in Pennsylvania, that they shall be equipped with brakes and that the brakes shall be in use, nevertheless you would have to find, if an accident occurred, that that or some other negligence on the part of the defendant was the proximate cause of the injury, even though it were in violation of a statute. And the same would apply to the speed, although it might be in excess of a speed regulation of the Commonwealth of Pennsylvania, nevertheless you would have to find that the speed or some other failure in the operation of the vehicle was the proximate cause of the injury, before you could find a verdict against the defendant."

In the excerpt cited the erroneous statement was the phrase, "as it seems to be in Pennsylvania" whereas in fact *at that time* there was no law in this State requir-

ing trailers to be equipped with brakes. However, we think that this erroneous statement did not rise to the degree of "reversible error," because the trial judge made it clear to the jury that any verdict found against any of the defendants would have to be predicated on an affirmative finding of negligence and not on a violation of a statute. The fifth, sixth and twelfth assignments are therefore overruled.

The first, third and seventh assignments of error are based upon the failure of the statement of claim to set forth the names of the minor children of the deceased. Paragraph 9 of the statement of claim reads as follows: "That the said Merle Fuller at the time of his death left surviving him his wife, the plaintiff, Helen Fuller, with whom he lived as her husband, together with two minor children." No rule for a more specific statement of claim was asked for. The Act of April 26, 1855, P. L. 309, 12 PS secs. 1602, 1603, provides: "Section 1. . . . That the persons entitled to recover damages for any injury causing death, shall be the husband, widow, children or parents of the deceased, and no other relative; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors. Section 2. That the declaration shall state who are the parties entitled to such action; the action shall be brought within one year after the death, and not thereafter."

In *Haughey v. Pittsburg Ry. Co.,* 210 Pa. 367, 369, 59 A. 1112, this court said in reference to actions for damages caused by negligence and the designation of the parties bringing the action: "It should have been averred in the statement that she and the two children were the parties entitled to the damages recovered in the action." In *Gentile v. Phila. & Reading Ry.,* 274 Pa. 335, 118 A. 223, we said: "Where, as here, the name of the legal plaintiff is properly upon the record, the manner in which the name of one beneficially interested may appear is not important." In *Paxos v. Jarka Corp.,*

314 Pa. 148, 171 A. 468, we also said: "The name of the proper plaintiff is upon the record; the manner in which the name of any one beneficially interested may appear, is unimportant." These assignments are overruled.

The second, eighth and twelfth assignments are based upon the alleged excessiveness of the verdict. We see no merit in them. The deceased at the time of his death was 36 years of age and was earning $14.40 a week. There were offered in evidence several checks indicating that his earnings in 1933 were as high as $30 a week. We will take judicial knowledge of the fact that in 1933 the industrial depression was about at its worst.

In *Foster v. Butler County Light Co.*, 255 Pa. 590, 100 A. 452, this court in a Per Curiam opinion affirmed the judgment of the court below which had refused to enter judgment n. o. v., after stating in its opinion (printed in our report) on the question of the measure of damages: "The degree of proof in such cases must vary. It is frequently impossible to prove by direct evidence the actual amount in money contributed by a husband for the benefit of his wife and family. Several witnesses on part of plaintiff testified as to the age of the deceased, the expectancy of his life, his occupation, the wages he was receiving at and before the time of accident, the condition of his health, his habits of life as to industry, and that deceased was living with and keeping his wife and children. This testimony, in our opinion, is sufficient to support substantial damages." In the case at bar the victim had a life expectancy of 31.07 years and, according to his wife's testimony, he was "in perfect health." These assignments of error are overruled.

The fourth assignment is based upon the refusal of the court to strike from the record certain evidence adduced on cross-examination of defendant Palazzolo. The latter was asked: "Do you have a certificate from the Public Utilities Commission of Michigan? A. I had it on file. I didn't have it issued at the time. Q. You

didn't have one at the time this accident happened, did you? A. No, sir." The record shows that on direct examination he states his business in June, 1934, as "hauling around Detroit" and that for the purpose of his business he had "two Chevrolet tractors." Because of this examination, the attorney for plaintiff examined him on the status of public carrier. The questions asked him on cross-examination were answered without objection. This court said in *McDyer v. Eastern Penna. Railways Co.*, 227 Pa. 641, 76 A. 841: "After testimony has been received without objection, the refusal to strike it out is not reviewable. In such a case the only course is to request the court to instruct the jury to disregard the testimony, and upon a refusal, to assign error." This assignment is overruled.

Appellants Palazzolo and De Wall complain that there was not sufficient evidence of negligence on the part of defendants to justify the submission of the case to the jury. With this we cannot agree *so far as these two defendants are concerned.*

First of all, there was evidence that the brakes were not in proper condition. As to this the garage mechanic testified as follows: "The front end of the truck, the steering mechanism and brakes and everything that had to do with the steering of it was in very bad shape. . . . From the looks of it, they were being used long after they should have been replaced." He also testified that the brake lining was soaked with grease. The truck-tractor had been in use a long time as its mileage indicated 83,000. There was also proof of the truck being driven at an excessive rate of speed and that it was traveling at least 40 or 45 miles an hour. It traveled over 200 feet after it left the road before it came to a stop. Another witness testified that the trailer just before it left the road "was bobbing up and down and swaying back and forth." The Vehicle Code of May 1, 1929, P. L. 905, which was in effect on the date of this accident, provides in section 1002 that the class (based

on weight) to which the truck-tractor involved in this accident belongs, shall not exceed a speed limit of 35 miles an hour. Not only did the offending vehicle exceed this limit but there was other evidence that justified the jury in finding that under all the circumstances the truck was proceeding at an unlawful rate of speed. It would be negligence to operate along the highway at any speed a vehicle of the weight of this truck, with the mechanical equipment in such a dangerous state of disrepair as was here revealed. The truck driver testified that just before the accident he was "going along the road around 35 miles an hour." He said: "I noticed a car in front of me . . . and all of a sudden he stopped quick without no sign of any kind and I put on my brakes to swing around him and the brakes locked and I just went over into the farmer's lawn." He added that he tried to release the brakes but was unable to do so.

As to the defendants, Palazzolo, the truck's owner, and De Wall, the driver, who was at the time Palazzolo's employee and engaged in furthering the business of his employer, plaintiff clearly made out a case for submission to the jury. We find no substantial error in the manner of the case's submission, and the court below did not, as respects the defendants Palazzolo and De Wall, err in discharging the rule for a new trial and in refusing judgment n. o. v.

The liability of the Fruehauf Trailer Company presents an entirely different question, and the verdict against this company stands upon a less secure foundation. Plaintiff's statement does not differentiate between the defendants in its charge of negligence. It avers that "each and all defendants were negligent" in the particulars already herein referred to. No distinctive act of negligence is charged against the trailer company. It is treated in the pleadings as if it had exactly the same relation to the cause of the accident as Palazzolo, the carrier, had. When we examine the evidence we find that the sole causes of the accident were (1) the

locking of the left front wheel of the truck, due to a mechanical defect arising from neglect in maintenance, and (2) excessive speed. It was not shown that the Fruehauf Trailer Company had any responsibility whatsoever for the condition of the greasy drum and brake lining, for the locking of the left front wheel or for Palazzolo's driving. It is, of course, elementary that in an action for damages arising from a tort, no recovery can be had until the tort is properly pleaded and adequately proved against the alleged tort-feasor.

Appellee's proposition is that the presence of the Fruehauf Trailer Company's manufacturers' and dealers' license plates on the semi-trailer, coupled with evidence that this defendant was a manufacturer of semi-trailers and the fact that this semi-trailer was being transported for the purpose of completion, were sufficient to take to the jury the question of the trailer company's responsibility for the accident. This proposition we must reject.

The limited use of manufacturers', jobbers' and dealers' registration plates is provided for by section 502 of the Motor Vehicle Code of 1929 and on the issue presented by this record it is not necessary to decide or discuss the extent of the presumption which arises from the use of such registration plates on motor vehicles, for the semi-trailer in the instant case cannot be regarded as a "motor vehicle" as that designation is used in the cases in which the principle above cited is applied. The word "motor" as used in "motor vehicle" means "that which imparts motion, a prime mover," as "a steam engine, a windmill, etc., any automotive vehicle" (Webster's New International Dictionary). An automotive vehicle is a *self-propelling* vehicle, as its etymology indicates. The statutory definitions are in accord with the foregoing. In the Act of May 1, 1929, P. L. 905, Article I, section 102, a "Truck-Tractor" is defined as follows: "Every motor vehicle designed and used primarily for drawing other vehicles . . ."; a "Trailer" is defined as follows: "Every vehicle without motive power, de-

signed to carry property or passengers wholly on its own structure, and to be drawn by a motor vehicle"; a "Tractor" is defined as "Every vehicle which is self-propelled, equipped with metal-wired wheels or crawlers, operated or propelled by any form of engine, motor, or mechanical power; . . . ."

It is obvious that when an inert steam locomotive is carried in a train of cars, it is only so much freight, even though it does run on its own wheels. Likewise, when an inert "automobile" or "trailer" is being towed by an "automotive vehicle," as in the case at bar, it is only so much freight even though it does run on its own wheels. In that case, a license tag on the inert vehicle merely announces the registration of that piece of freight. It raises no presumption that the driver of the motor vehicle which is "towing" or carrying the "freight" is an employee of the *owner of the freight,* i. e., the towed vehicle, and is subject to his control. No such presumption arises for such a presumption would, except in rare cases, be contrary to the facts of human experience. If a man's car breaks down on the highway and he engages a towing company to "tow" his car to a repair shop, the towing company is ordinarily an independent contractor, and its employees are not the employees of the man who is having his car towed.

The evidence in this case is all to the effect that Palazzolo was the owner of truck-tractors and employed drivers to operate them in hauling for manufacturing plants, that the licenses on these trucks, as of the truck that was the "instrumentality" of the tort, were in the name of Palazzolo, that the trucks were owned entirely by him, that he had complete charge and control of the drivers of them, that he had on numerous occasions towed trailers or chassis for the Fruehauf Trailer Company to various destinations, that in each instance he made a flat rate charge for hauling as he did in the instant case, and that the trailer company exercised no control whatever over the chassis which was being hauled from Detroit to Buffalo and which was being

towed by Palazzolo's driver when the fatal accident occurred. All the evidence establishes that Palazzolo's relation to the trailer company was that of an independent contractor, exactly as would be the relation of a railroad company to a corporation whose inert locomotives the railroad company carries as freight over its lines and by the use of *its own* locomotive power. It is settled in Pennsylvania that a person is not liable for the acts of negligence of another, unless the relation of master and servant or principal and agent exists between them and that when an injury is done by a person exercising an independent employment the party employing him is not responsible to the person injured. This has been expressly held in *Silveus v. Grossman,* 307 Pa. 272, 161 A. 362. There we said: "The man of average prudence who engages another to do an important piece of lawful work will have a care that the man so engaged is fitted for his tasks and when thus reasonably assured he engages him as an independent contractor he should not be held responsible for the negligence of the contractor and the latter's workmen. . . . The very phrase 'independent contractor' implies that the contractor is independent in the manner of doing the work contracted for. How can the other party control the contractor who is engaged to do the work and who presumably knows more about it than the man who by contract authorized him to do it? Responsibility goes with authority." See also *Smith-Faris Co. v. Hospital Assn. et al.,* 313 Pa. 254, 169 A. 233, where we quoted with approval the following from 14 R. C. L. 71: "The fact that the contractor employs, pays and has full power to control the workmen is practically decisive of his independence." In *Tyler et al. v. MacFadden Newspaper Corp.,* 107 Pa. Super. Ct. 166, 172, that court, in an opinion by Judge KELLER, held that if one "lets out the work to another, reserving no control over the work or workmen . . . then the relation is not that of master and servant, but of independent contractor, and the contractor alone is liable for the negligence of his em-

ployees," citing *Smith v. State Workmen's Ins. Fund,* 262 Pa. 286, 105 A. 90, and others.

The only way responsibility can be fastened on one who engages an independent contractor to do a certain piece of work for him, for the consequences of that work being done negligently, is by *pleading* and *proving* that the engager did not exercise due care to secure a competent contractor for the work (see the cases cited in the opinion in the *Silveus Case,* supra). It is equally well settled that the fact that the contractor was negligent in respect to the work in question affords no presumption that the employer was guilty of negligence in having engaged him. See *Hawke v. Brown,* 28 App. Div. 37, 50 N. Y. Supp. 1032.

In the instant case the burden of proof rested, of course, upon the plaintiff. The negligence of the Fruehauf Trailer Company—and of the other two defendants—had to be pleaded and proved. It was not pleaded that the trailer company engaged an incompetent independent contractor and if such an allegation had been made the record would be barren of supporting proof. Plaintiff's theory of her cause of action was that the license tag on the trailer raised a presumption that De Wall, the driver of the "motor vehicle" which supplied the motive power, was *presumably* the employee also of the owner of the chassis, which latter was merely so much inert matter for the motor vehicle to tow. This theory is entirely untenable. No such presumption arises from a license tag when that tag is attached to a vehicle which at the time it was involved in an accident was involved *primarily* as mere inert matter or freight and not as a motor vehicle. The fact that a certain mass of matter has the *form* of a motor vehicle does not make it a motor vehicle which gives rise to the presumption of ownership at the time it was involved in a collision or other accident *unless at the time the alleged cause of action arose it was functioning* as a motor vehicle, being propelled either by its own power or by force of gravity. If it was being pulled either on its

own wheels or on a truck or other contrivance, by a motor vehicle which was self-propelled or even propelled by force of gravity, *it* cannot be treated as a motor vehicle giving rise to the presumption referred to. In *Leamon v. State,* 17 Ohio App. 323, the Court of Appeals of Ohio decided that "A semi-trailer is a separate vehicle which is not driven or propelled by its own power, but which, to be useful, must be attached to and become part of another vehicle, and *then loses its identity as a separate vehicle* [italics supplied]." The motor vehicle of Palazzolo's could have been either towing or carrying one or more inert masses of matter and each of these masses could have borne a different plate indicative of ownership without fastening upon *the owners of these masses* responsibility for the negligent acts of the employee of him who owned *the towing or carrying motor vehicle.*

No presumption against the Fruehauf Trailer Company having arisen by the proof that its license tag was on the trailer at the time of this accident, the burden of proof originally assumed by plaintiff never shifted and at no stage of this case did there pass to the trailer company the burden of coming forward with evidence. In *Abrath v. N. E. Ry. Co.,* 32 W. R. 50, 53 (cited by us in *Henes v. McGovern,* 317 Pa. 302, 310), Lord Justice BOWEN said: "In every lawsuit somebody must go on with it [the burden of proof]; the plaintiff is the first to begin, and if he does nothing, he. fails. If he makes a prima facie case, and nothing is done by the other side to answer it, the defendant fails." In the instant case, it must be held that as respects the Fruehauf Trailer Company, the plaintiff has "done nothing." She has not offered any evidence making out a prima facie case and thereby putting on the defendant the burden of coming forward with evidence or failing.

In appellee's paper book, the alleged negligence of the defendants is classified as threefold, to wit: (a) defective brakes, (b) unlawful speed, and (c) no brakes on the semi-trailer were connected or in use. As to (a)

and (b), these clearly were not the negligence of the Fruehauf Company; as to (c), no statute required that the brakes on the semi-trailer be connected or in use and it was not shown that the failure to have these brakes connected or in use amounted to negligence or was *the proximate cause* or *one of the proximate causes of the accident.* In *Frankel v. Norris,* 252 Pa. 14, 97 A. 104, this court said: "The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred." In *Hoag v. Lake Shore & Mich. Southern R. R. Co.,* 85 Pa. 293, 298, this court, in an opinion by Justice PAXSON, said: "In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." By no accepted standard could the fact that the brakes on the semi-trailer were not connected with the tractor, be characterized as the proximate cause of this accident. Furthermore, if these brakes should have been connected with the tractor, *that* duty was obviously the duty of the *carrier,* and not the duty of the *consignor.* When the latter contracted to have its trailer transported by an independent contractor, presumably competent and whose competence for the job assigned him, the Fruehauf Company had certainly no reason to question, its duty in respect to the transportation of that trailer was discharged.

The instant case appears to be *on its facts sui generis.* However, the principles that control its decision have long been established. The relation of Palazzolo to the Fruehauf Trailer Company was unmistakably that of an independent contractor. When one accords to the trailer, as used in this case, its proper status, the conclusion follows that the presence on that trailer of the Fruehauf Company's dealers' license tag did not affect

the independent contractor relationship of Palazzolo to the Fruehauf Company in the slightest degree. In the case of the *Magnolia Petroleum Co. v. City of Port Arthur* (Texas Civil Court of Appeals), 209 S. W. 803, also 209 S. W. 991, the City of Port Arthur brought suit against the Petroleum Company for damages to the city's bridge across a ship canal in that city. The defendant, the owner and operator of an oil refinery, had loaded 1,497,676 gallons of gasoline on the steamship "Splendor," an ocean-going tank steamer, for transportation. This steamship could not be safely and properly navigated in the Neches River and in the "Port Arthur Ship Canal" without the assistance of a tugboat with adequate power to tow and guide her along a safe course through the river and canal. The Magnolia Petroleum Company owned the tug "Magnolia" and this company, with this tugboat, undertook to tow the "Splendor" through this canal and out to sea. The tugboat was under the control of the Petroleum Company and the tugboat's captain and crew were employees of this company. The "Splendor's" master and crew "assisted and coöperated" with the captain of the tugboat by means of whistle signals "touching the maneuvers in navigation." The "Splendor" in its passage through the canal collided with the bridge across the canal, greatly damaging it. The question presented was whether the owner of the tugboat or the owner of the "Splendor" was to be held answerable in damages. It was held that the former was the responsible party. The Petroleum Company took an appeal and "advanced the proposition that the "Splendor" was the special master of the tug, and the tug was the special servant of the "Splendor," and hence the relation of master and servant did not exist between the defendant [the Petroleum Company] and the tug, and the defendant was not liable for the negligence, if any, of the tug, in towing the "Splendor" down the canal." This proposition was rejected and the *defendant as owner of the tug* was held liable for the damages suffered by the City of Port Arthur (the plain-

tiff) in the injuries to its bridge. The Court of Civil Appeals of Texas, in support of its conclusion, cited *Sturgis v. Boyer*, 24 How. 110, 16 L. Ed. 591, where the following rule is announced: "By employing a tug to transport their vessel from one point to another, the owners of the tow do not necessarily constitute the master and crew of the tug their agents in performing the service. They neither appoint the master of the tug or ship the crew; nor can they displace either the one or the other. Their contract for the service, even though it was negotiated with the master, is, in legal contemplation, made with the owners of the vessel; and the master of the tug, notwithstanding the contract was negotiated with him, continues to be the agent of the owners of his own vessel, and they are responsible for his acts in her navigation."

It is true that there are cases where the owner is liable for the negligence of the independent contractor, but the present record presents no such case. The instances referred to in chapter 15 of the Restatement of the Law of Torts, and which can claim even remote kinship to the case now before us, are cases where an independent contractor is engaged to undertake activities classed as (1) "ultra-hazardous" or (2) "inherently dangerous." See sections 423 and 427. An illustration of "ultra-hazardous work" is where an electric company entrusts to an independent contractor the repair of its wires used to transmit a deadly current. Illustrations of "inherently dangerous work" are the entrusting to another the use of instrumentalities such as high explosives. In such a case the owner is liable unless he has "so acted as to minimize to the uttermost the danger inherent in the nature of the work or in the instrumentalities used."

The charge of liability made here against the Fruehauf Trailer Company, which merely entrusted a harmless trailer to an independent contractor for delivery to a third person, finds no support in any principle or

illustration used in the Restatement of the Law of Torts. The well-known rule that an owner of a chattel must not entrust it to another for use, *if risks of mechanism arise because of its condition*, is wholly inapplicable here. There is not a particle of proof that the trailer contributed in any way to the accident, the two sole causes of which were the "locking of the left front wheel" of the truck-tractor and "excessive speed."

In the case of *Delair v. McAdoo*, 324 Pa. 392, 188 A. 181, the injuries complained of were due to a collision caused by the defendant's driving a car with defective tires. In that case there was a causal connection between an obvious defect which it was defendant's duty to remedy, and the injuries plaintiff sustained. In *Serfas v. Lehigh & New England R. R. Co.*, 270 Pa. 306, 113 A. 370, and in *McCann v. Penna. R. R.*, 119 Pa. Super. Ct. 205, it was held to be negligence to drive without an adequate headlight. In *Scheer v. Melville*, 279 Pa. 401, 123 A. 853, it was held that an employer was liable if a defect in machinery operated by an employee causes injuries to third persons. In *Trusty et ux. v. Patterson et al.*, 299 Pa. 469, 149 A. 717, it was held that a person engaged in hiring out automobiles to others to drive is liable for injuries resulting to third persons by reason of the fact that the automobile so hired out had defective brakes. In all these cases there was a direct causal connection between mechanical defects and the injuries complained of. In the instant case there was no legal connection whatever between the death of plaintiff's decedent and the fact that the trailer's brakes could not be operated from the driver's seat on the truck-tractor. If the three-thousand-pound trailer had been so much inert matter *on top of* the truck-tractor, instead of "hitched on behind" and running on its own wheels, its owner certainly could no more be charged with the death of plaintiff's husband than could the owner of three thousand pounds of freight in a car on a railroad be charged with responsi-

bility for the death of someone who was killed because the engineer of the locomotive hauling the car containing the freight permitted the train to "run away" down a grade or because the locomotive was defective. It would be an anomaly to hold in such a case that the weight of the three thousand pounds of freight was in part responsible for the tortious death because "the pressure of this three thousand pounds" accelerated the speed of the runaway train. There is no proof whatever that had *all* the brakes, *including the brakes on the trailer,* been in operation, the accident in question would have been avoided. It is a novel proposition that one who adds weight to any load transported by any vehicle is responsible for any injuries resulting from that vehicle's colliding with somebody. Weight is one of the two factors in momentum, and if those who in any way contribute to the weight carried or pulled by a motor vehicle, should be held legally responsible whenever one of those vehicles by running away or by being operated at an excessive rate of speed causes injury to third persons, a responsibility hitherto unknown to the law would be placed on all those who as passengers ride in motor vehicles or who ship any freight by truck.

Plaintiff did not make out as against the Fruehauf Trailer Company a case for the jury. No proof of any negligence on the part of that company or *its* employees was offered by the plaintiff. It follows that this defendant's "fifth point" asking for binding instructions should have been affirmed.

The judgment against Michael Palazzolo and Joseph De Wall is affirmed.

The judgment against the Fruehauf Trailer Company is reversed and is here entered for that defendant, non obstante veredicto.

Mr. Chief Justice KEPHART dissents from the entry of judgment for the Fruehauf Trailer Company, non obstante veredicto.